**APPLIANCE SALES & SERVICE v. COMMAND ELECTRONICS CORP.**

[115 N.C. App. 14 (1994)]

APPLIANCE SALES & SERVICE, INC., Plaintiff v. COMMAND ELECTRONICS COR-
PORATION and ISSAC SHEPHARD FUNDERBURK, III (AND ALL OTHER OFFI-
CERS, DIRECTORS AND STOCKHOLDERS OF COMMAND ELECTRONICS
CORPORATION, Defendants

No. 939SC551

(Filed 7 June 1994)

1. **Appeal and Error § 471 (NCI4th)— enforceability of forum
   selection clauses—abuse of discretion as appropriate
   standard of review**

   The abuse of discretion standard is the appropriate standard
   of appellate review for orders assessing the enforceability of
   forum selection clauses.

   **Am Jur 2d, Appeal and Error §§ 772 et seq.**

2. **Venue § 7 (NCI4th)— refusal to enforce forum selection
   clause—no abuse of discretion**

   The trial court did not abuse its discretion in refusing to
   enforce the terms of the forum selection clause in the parties'
   contract, since defendants had made at least two prior represen-
   tations to the effect that if plaintiff sought a remedy, plaintiff
   could sue defendants in the courts of North Carolina, and defend-
   ants are estopped from asserting the forum selection clause as a
   defense to the filing of the action in North Carolina.

   **Am Jur 2d, Venue §§ 7, 8.**

   **Validity of contractual provision limiting place or court
   which action may be brought. 31 ALR4th 404.**

Appeal by defendants from order entered 8 February 1993 by
Judge Anthony M. Brannon in Vance County Superior Court. Heard in
the Court of Appeals 3 March 1994.

This case involves a "forum selection clause" in a commercial
contract. Plaintiff is a North Carolina corporation with its principal
place of business in Henderson, North Carolina. Defendant Com-
mand Electronics Corporation is a South Carolina corporation and
its registered office is located in Mount Pleasant, South Carolina.
Defendant Command Electronics Corporation does business in
North Carolina but has never received a Certificate of Authority from
the North Carolina Secretary of State to transact business in North
Carolina.

On 11 July 1991, plaintiff, a North Carolina corporation, filed a complaint in Vance County District Court against defendants. Plaintiff sought to recover damages for breach of contract, fraud, and unfair and deceptive trade practices in connection with a contract under which plaintiff was to become a vendee of alarm systems known as "Med Command Systems" for defendant Command Electronics Corporation.

The underlying facts of this case are described in an affidavit filed by Andrew Thomas, plaintiff's Chairman of the Board, which provides in pertinent part as follows:

> That pursuant to an advertisement of solicitation received by us at our Henderson, North Carolina business, a sales representative of Command Electronics Corporation contacted my son, David Thomas, and me about our becoming a dealer/vendee for the sale of Med Command Systems for Command Electronics Corporation.

> On March 14, 1991, a sales representative of Command Electronics Corporation met in Henderson, North Carolina with officers of Appliance Sales & Service, Inc. proposing that we become the "Vendee" for Command Electronics Corporation of Med Command Systems, with Granville, Person, Durham, Wake, Franklin, Vance, and Warren Counties in North Carolina and Mecklenburg, Halifax, Brunswick, and Pittsylvania Counties in Virginia as our "area." A contract was written up and signed at that time between Command Electronics Corporation with Appliance Sales & Service, Inc. for those counties, the contract stating that Command Electronics Corporation "will not appoint another vendee in the above listed county/counties during the term of this agreement or its renewal in writing by the vendee." The contract had a term through December 31, 1991 "and may thereafter be renewed at the option of the vendee, in writing, each year at no cost or purchase required."

> Appliance Sales & Service, Inc. paid to Command Electronics Corporation the sum of $7,493.00 (one-half of the total contract price) on March 14, 1991 with the contract providing that the remaining $7,493.00 balance would be payable at a later date (all of which $14,986.00 was paid by us to Command Electronics Corporation).

> Thereafter a representative of Command Electronics Corporation again contacted us at Appliance Sales & Service, Inc. and

advised us that Command Electronics Corporation had made a mistake in its prior contract with Appliance Sales & Service, Inc. in that:

> 1. Command Electronics Corporation was not licensed in the State of Virginia and therefore could not give any areas in Virginia to Appliance Sales & Service, Inc. or to anyone else, and,

> 2. Command Electronics Corporation had made a demographic study which indicated that there was insufficient response (or demand) for Command Electronics Corporation to attempt to sell Med Command Systems or for it to have a vendee in Granville, Person or Durham Counties (in which it was not going to put vendees) for said systems.

For the above reasons, Command Electronics Corporation requested Appliance Sales & Service, Inc., to switch areas so as to exclude these counties.

On March 25, 1991, I received a letter from Issac Shephard Funderburk, III forwarding me a proposed new contract and requesting me to send the old contract back to Command Electronics Corporation (with the proposed new contract excluding Granville, Person, Durham and other counties which were in my original contract).

I thereafter personally called Issac Shephard Funderburk, III and told him that Appliance Sales & Service was particularly interested in Durham and Granville Counties (and was not interested in the additional counties suggested by Command Electronics Corporation), but Issac Shephard Funderburk, III personally emphasized to me that Command Electronics Corporation's demographic studies had indicated that it was not profitable to place any vendee in Granville and Durham (and other) Counties and that Command Electronics Corporation was not going to place any vendees in Granville or Durham Counties, and Issac Shephard Funderburk, III personally promised me further that Appliance Sales & Service, Inc. would be given a right of first refusal relative to Granville, Durham, and Person Counties in North Carolina and Pittsylvania and Halifax Counties in Virginia if Command Electronics Corporation decided to open up these territories or have vendees in any of them.

. . . .

Specifically relying upon these specific representations and assurances . . . Appliance Sales & Service, Inc. through me agreed to switch areas (excluding the aforesaid counties) by rewording the areas in the original contract through another contract document (which "Shep" Funderburk had prepared and back-dated to March 14, 1991, the date of the original contract), switching the counties of Granville, Person, and Durham and the Virginia Counties in the original contract for other counties of a lesser nature in North Carolina.

On May 8, 1991, the sales representative of Command Electronics Corporation picked up the new contract document signed by Appliance Sales & Service, Inc. (back-dated March 14, 1991) and further gave to Appliance Sales & Service, Inc. two addendums to the same.

. . . .

At the time . . . I and the other officers of Appliance Sales & Service, Inc. did not know that Command Electronics Corporation had already entered into a vendee contract with Adcock's Business Machines, Inc. relative to Person, Granville, and Durham Counties in North Carolina and Pittsylvania and Halifax Counties in Virginia.

Appliance Sales & Service, Inc. relied upon said statements, affirmations, representations, and assurances in agreeing to give up its rights as a vendee in Person, Durham and Granville Counties in North Carolina and Pittsylvania and Halifax Counties in Virginia and in signing a new contract document substituting lesser counties for them.

The first knowledge by personnel of Appliance Sales & Service, Inc. of said misrepresentations occurred on Monday, June 3, 1991, (when they were contacted by Ken Adcock); that within 72 hours thereafter, we had our attorney write to Command Electronics Corporation (attention: "Shep" Funderburk) and gave formal notice and demands that the alleged contract between Command Electronics Corporation and Appliance Sales & Service, Inc. be voided immediately and that Appliance Sales & Service, Inc. be refunded the $14,986.00 previously paid (said refund to be on or before June 20, 1991) and advised Command Electronics Corporation that the one Med Command System sales kit in the

APPLIANCE SALES & SERVICE v. COMMAND ELECTRONICS CORP.

[115 N.C. App. 14 (1994)]

possession of Appliance Sales & Service, Inc. could be picked up by Command Electronics Corporation at any reasonable time. Command Electronics Corporation has never refunded (or tendered a refund) of any part of said $14,986.00 to us.

The affidavit of Ken Adcock, President of Adcock's Business Machines, Inc., provided as follows:

That on March 15, 1991 I signed a "Vendee" or "Purchase Order Contract" with Command Electronics Corporation indicating that Adcock's Business Machines, Inc. would become the "vendee" for Command Electronics Corporation of Med Command Systems with Person, Granville, Durham and other Counties in North Carolina, and Pittsylvania and Halifax and other Counties in Virginia as its "area"; that said Contract specified that Command Electronics Corporation "will not appoint another vendee in the above listed County/Counties during the term of this agreement or its renewal in writing by the vendee." . . . Adcock's Business Machines, Inc. is located in Oxford (Granville County) North Carolina and paid Command Electronics Corporation $14,986.00 for said Contract.

At the time said Contract was signed, the representative of Command Electronics Corporation showed me a check in his pocket (dated March 14, 1991) from Appliance Sales & Service, Inc. to Command Electronics Corporation in the sum of $7,493.00. I was then advised by Command Electronics Corporation's personnel that they had given Appliance Sales & Service, Inc. a Contract the day before but preferred to give the Contract to me and that if I signed for Adcock's Business Machines, Inc. the Contract with Command Electronics Corporation (set forth in the above paragraph), they would advise Appliance Sales & Service, Inc. that it could not be a "vendee" and would send Appliance Sales & Service, Inc. back its check.

I had wanted to become a vendee for other Counties in North Carolina including especially Vance County, North Carolina. I was advised by Command Electronics Corporation that I was the only vendee in the State of North Carolina except for a small area around Wilmington, North Carolina which was in the area of a South Carolina vendee, and that Command Electronics Corporation would not place another vendee in North Carolina without giving me the right of first refusal to become a vendee in that area.

Shortly after I signed my Contract of March 15, 1991, I received a demographic study (which Command Electronics Corporation had promised me). It contained a list of places 4 pages long for Durham County where I could find potential business outlets and an additional 1-1/4 pages for Granville County.

I had a telephone conversation at that time with Issac Shephard Funderburk, III concerning the demographic studies and he personally discussed with me my being the vendee in Granville County, Durham County and some of the other counties indicated in my contract. He further personally emphasized to me that there were no other vendees in North Carolina (except for the Wilmington area) and that I would have a right of first refusal if they put a vendee in any other area.

On June 3, 1991 I first discovered that Appliance Sales & Service, Inc. had been made a vendee in North Carolina, and that it had been persuaded by Command Electronics Corporation to modify rather than terminate its Contract with Command Electronics Corporation and that its check to Command Electronics Corporation had never been returned.

On 4 November 1991, defendants filed an answer, alleging *inter alia* that a forum selection clause barred the action from being heard in North Carolina. Through the consent of the parties, the case was transferred to Superior Court by order filed 17 November 1992. On 7 January 1993, defendants' filed a motion to dismiss pursuant to G.S. 1A-1, Rule 12(b). On 5 February 1993, plaintiff filed the two affidavits discussed *supra*. On 8 February 1993, the trial court denied defendants' motion to dismiss, stating that "[a]fter hearing arguments of counsel and reviewing the court files, the Court finds, from the totality of the circumstances reflected in the court files and from arguments of counsel, that this Court has jurisdiction over the subject matter and the parties, and that the enforcement of the forum selection clause in the alleged contract would be unfair and unreasonable." Defendants appeal.

*Zollicoffer & Long, by John H. Zollicoffer, Jr., for plaintiff-appellee.*

*Bobby W. Rogers for defendant-appellants.*

EAGLES, Judge.

Defendants argue that the trial court erred in denying their motion to dismiss "pursuant to the forum selection clause of the contract." We disagree.

I.

In *Perkins v. CCH Computax, Inc.*, 333 N.C. 140, 141, 423 S.E.2d 780, 781 (1992), our Supreme Court upheld the validity of a forum selection clause contained in a commercial contract to purchase software entered into between a North Carolina certified public accountant and a California-based software company. In *Perkins*, our Supreme Court stated:

> Recognizing the validity and enforceability of forum selection clauses in North Carolina is consistent with the North Carolina rule that recognizes the validity and enforceability of choice of law and consent to jurisdiction provisions. *Johnston County v. R.N. Rouse & Co.*, 331 N.C. 88, 414 S.E.2d 30. For the foregoing reasons, we embrace the modern view and hold that forum selection clauses are valid in North Carolina. A plaintiff who executes a contract that designates a particular forum for the resolution of disputes and then files suit in another forum seeking to avoid enforcement of a forum selection clause carries a heavy burden and must demonstrate that the clause was the product of fraud or unequal bargaining power or that enforcement of the clause would be unfair or unreasonable. The dissent argues that this Court's decision in this case "place[s] tens of thousands of our citizens at the mercy of those who will take advantage of them by the use of forum selection clauses." We disagree. Under our decision, the trial court retains the authority to hear the case when it determines that the forum selection clause was the product of fraud or unequal bargaining power or that the clause would be unfair or unreasonable.

333 N.C. at 146, 423 S.E.2d at 784. After *Perkins*, in *Bell Atlantic Tricon Leasing Corp. v. Johnnie's Garbage Serv.*, 113 N.C. App. 476, 439 S.E.2d 221 (1994), this Court analyzed a consent to jurisdiction clause in a standardized lease agreement purporting to bind a North Carolina corporation to litigate in a New Jersey trial court. *Id.* at 479, 439 S.E.2d at 224. There, in determining whether the agreement was unfair or unreasonable, this Court examined the "circumstances surrounding the defendant's signing of the lease agreement" and stated:

When he [the North Carolina corporation's president] signed the lease agreement, defendant was a 79-year-old man who ran a small family business. There was no bargaining over the terms of the contract between the parties, who were far from equal in bargaining power. The lease agreement itself was a one page preprinted form with type on the front and back. The forum selection and consent to jurisdiction provisions were on the back side of the paper, where there was no place for defendant to sign or initial. The provisions were in fine print under a paragraph labeled "Miscellaneous," and were never called to defendant's attention or explained to him. Plaintiff made no showing whatsoever that defendant was actually aware or made aware of the significance of the consent to jurisdiction clause.

Considering all of these factors, we find that defendant did not knowingly and intelligently consent to the jurisdiction of the New Jersey courts. Therefore, enforcement of this provision would be both unfair and unreasonable.

*Id.* at 480-81, 439 S.E.2d at 224-25.

[1] Here, the trial court, after reviewing "the totality of the circumstances reflected in the court files," found that the enforcement of the forum selection clause "would be unfair and unreasonable." Neither Perkins, nor any subsequent reported decision of the North Carolina appellate courts that we have discovered, has explicitly stated the standard of appellate review for orders assessing the enforceability of forum selection clauses. We note that the federal circuits are divided between the abuse of discretion standard, *see Pelleport Investors, Inc. v. Budco Quality Theaters, Inc.*, 741 F.2d 273, 280 n.4 (9th Cir. 1984); *Sun World Lines, Ltd. v. March Shipping Corp.*, 801 F.2d 1066, 1068 n.3 (8th Cir. 1986); and the *de novo* standard of review, *see Hugel v. Corporation of Lloyd's*, 999 F.2d 206, 207 (7th Cir. 1993); *Lambert v. Kysar*, 983 F.2d 1110, 1112 (1st Cir. 1993); *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 956 (10th Cir.), *cert. denied*, —— U.S. ——, 121 L.Ed.2d 584 (1992); *Instrumentation Assocs., Inc. v. Madsen Electronics (Canada) Ltd.*, 859 F.2d 4, 5 (3d Cir. 1988). Given that the disposition of each case is highly fact-specific, we conclude that the abuse of discretion standard is the more appropriate standard. *See State v. Locklear*, 331 N.C. 239, 248, 415 S.E.2d 726, 732 (1992) ("The abuse of discretion standard of review is applied to situations, such as this, which require the exercise of judgment on the part of the trial court. The test for abuse

of discretion requires the reviewing court to determine whether a decision 'is manifestly unsupported by reason,' or 'so arbitrary that it could not have been the result of a reasoned decision.' *Little v. Penn Ventilator, Inc.*, 317 N.C. 206, 218, 345 S.E.2d 204, 212 (1986)"); *Greenwood v. Tillamook Country Smoker, Inc.*, 857 S.W.2d 654, 656 (Tex.App. 1993); *Personalized Marketing Service, Inc. v. Stotler & Co.*, 447 N.W.2d 447, 450 (Minn.App. 1989), *review denied* (12 January 1990). *Cf. M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 7, 32 L.Ed.2d 513, 519 (1972) (abuse of discretion standard applicable to forum *non conveniens* determination). However, we note that the trial court's order here would also be affirmed under the *de novo* standard of review.

## II.

We now address whether the trial court abused its discretion by declining to enforce the contract's forum selection clause which provided:

> 9. Place of Execution: The parties hereto agree that this Agreement shall be deemed to have been executed in the State of South Carolina, and that the laws of said State shall govern any interpretation or construction of this Agreement. In the event of a disagreement between the parties, the Courts in Charleston County, South Carolina shall have exclusive jurisdiction and venue and the Company shall be entitled to reasonable attorney fees and collection costs.

In *Johnston County v. R.N. Rouse & Co.*, 331 N.C. 88, 92-93, 414 S.E.2d 30, 33 (1992), our Supreme Court stated:

> Historically, parties have endeavored to avoid potential litigation concerning judicial jurisdiction and the governing law by including in their contracts provisions concerning these matters. Although the language used may differ from one contract to another, one or more of three types of provisions (choice of law, consent to jurisdiction, and forum selection), which have very distinct purposes, may often be found in the boilerplate language of a contract. The first type, the choice of law provision, names a particular state and provides that the substantive laws of that jurisdiction will be used to determine the validity and construction of the contract, regardless of any conflicts between the laws of the named state and the state in which the case is litigated. The second type, the consent to jurisdiction provision, concerns

**APPLIANCE SALES & SERVICE v. COMMAND ELECTRONICS CORP.**

[115 N.C. App. 14 (1994)]

the submission of a party or parties to a named court or state for the exercise of personal jurisdiction over the party or parties consenting thereto. By consenting to the jurisdiction of a particular court or state, the contracting party authorizes that court or state to act against him. A third type, a true forum selection provision, goes one step further than a consent to jurisdiction provision. A forum selection provision designates a particular state or court as the jurisdiction in which the parties will litigate disputes arising out of the contract and their contractual relationship. . . .

Due to the varying language used by parties drafting these clauses and the tendency to combine such clauses in one contractual provision, the courts have often confused the different types of clauses. One commentator recognizing this confusion has offered the following guidance:

A typical forum-selection clause might read: "[B]oth parties agree that only the New York Courts shall have jurisdiction over this contract and any controversies arising out of this contract." . . .

A . . . "consent to jurisdiction" clause[] merely specifies a court empowered to hear the litigation, in effect waiving any objection to personal jurisdiction or venue. Such a clause might provide: "[T]he parties submit to the jurisdiction of the courts of New York." Such a clause is "permissive" since it allows the parties to air any dispute in that court, without requiring them to do so.

. . . A typical choice-of-law provision provides: "This agreement shall be governed by, and construed in accordance with, the law of the State of New York."

(Citations omitted.)

Reviewing the contractual provisions at issue here, the language, "[t]he parties hereto agree that this Agreement shall be deemed to have been executed in the State of South Carolina, and that the laws of said State shall govern any interpretation or construction of this Agreement," is a choice of law provision. *Id.* The second sentence, "[i]n the event of a disagreement between the parties, the Courts in Charleston County, South Carolina shall have exclusive jurisdiction and venue . . ." is a forum selection clause. *Id.*

III.

[2] Here, we cannot say that the trial court's refusal to enforce the forum selection clause is without a rational basis in the facts. The evidence shows that defendants made at least two prior representations to the effect that if plaintiff sought a remedy, plaintiff could sue defendants in the courts of North Carolina. In response to plaintiff's second set of interrogatories, defendants admitted that a "complaint or accusation" had been made against them to the North Carolina Attorney General. One representation was made to the Office of the Attorney General, as noted in John H. Zollicoffer, Jr.'s (plaintiff's counsel's) uncontradicted affidavit which provides in pertinent part as follows:

That the matters raised in the complaint were brought to the attention of the Consumer Protection Division of the Office of the Attorney General of the State of North Carolina. That in its attempt to keep the Attorney General of the State of North Carolina from taking any action on the same, [defendant] Shep Funderburk (Issac Shephard Funderburk, III) wrote a letter on behalf of Command Electronics Corporation dated July 9, 1991 to John H. Zollicoffer, Jr., Attorney for Plaintiff, and further wrote another letter dated July 9, 1991 to the Office of the Attorney General, Consumer Protection Division.

That in the letter to John H. Zollicoffer, Jr., Shep Funderburk stated that:

". . . . indeed you have available a <u>civil court system in the great [S]tate of North Carolina</u> to your client if indeed your client feels that they were injured in their dealings with Command Electronics Corporation."

In the letter to the North Carolina Attorney General on the same day, Shep Funderburk stated on behalf of Command Electronics Corporation:

"If Appliance Sales & Service and Command Electronics Corporation can't work out their differences, then their attorney has the civil <u>court of North Carolina</u> available to him to file suit."

(Emphasis in original.) Given defendants' prior inconsistent conduct in their communications with plaintiff and the Attorney General, we conclude that the trial court could have found *inter alia* that de-

fendants are estopped from asserting the forum selection clause as a defense to the filing of the action in North Carolina. We conclude that plaintiff has met its "heavy burden." *Perkins*, 333 N.C. at 146, 423 S.E.2d at 784. From the record, it is clear that the trial court did not abuse its discretion in refusing to enforce the terms of the forum selection clause.

### IV.

For the reasons stated, the trial court's 8 February 1993 order is affirmed.

Affirmed.

Judges MARTIN and McCRODDEN concur.