DAVID B. COX, PLAINTIFF APPELLEE v. DINE-A-MATE, INC., ENTERTAINMENT PUBLI-CATIONS, INC., AND CUC INTERNATIONAL, INC., DEFENDANTS APPELLANTS

No. COA97-1157

(Filed 16 June 1998)

**1. Appeal and Error § 114 (NCI4th)— motion to dismiss— forum selection clause—denied—appealable**

The trial court's denial of defendant's Rule 12(b)(6) motion to dismiss an action for breach of an employment agreement based on a forum selection clause in the agreement was immediately appealable.

**2. Venue § 7 (NCI4th)— breach of employment contract— forum selection clause—unenforceable**

The trial court did not abuse its discretion in an action for breach of an employment contract by denying defendants' motion to dismiss based on a forum selection clause where the court concluded based on its findings that the clause was the product of unequal bargaining power and that enforcement of the clause would be unfair and unreasonable. The record on appeal supports the trial court's findings of fact and the findings support the conclusions.

**3. Labor and Employment § 82 (NCI4th)— breach of employment contract—covenant not to compete—no trade secrets to protect**

In an action arising from an alleged breach of an employment contract in which defendants cited a covenant not to compete and a forum selection clause, the trial court did not err by denying defendants a preliminary injunction where the court concluded that the covenant not to compete is governed by the laws of North Carolina and that the covenant fails the North Carolina test for validity in several ways, including violation of public policy. The court correctly concluded that defendants had no trade secrets for the employment agreement to protect and therefore the contract falls squarely into the category of an attempt to prevent competition rather than to protect a legitimate interest.

Appeal by defendants from orders entered 11 July 1997 by Judge L. Todd Burke in Guilford County Superior Court. Heard in the Court of Appeals 11 May 1998.

This case arises from a dispute involving a purported employment agreement between plaintiff, who is a former employee of defendant Dine-A-Mate, and defendants. After having responded to a blind advertisement in the Greensboro News and Record, plaintiff was hired by defendant Dine-A-Mate in or about April 1993. Plaintiff worked under an oral agreement as an area director. Plaintiff's office was in Greensboro, N.C. Beginning in or about July 1995, plaintiff repeatedly was asked to sign employment agreements that included covenants not to compete. In January 1996, plaintiff signed an employment agreement under threat of losing his job. Plaintiff was fired from his job in December 1996. Plaintiff filed suit in April 1997, alleging defendants breached their contract with him by refusing to

**COX v. DINE-A-MATE, INC.**

[129 N.C. App. 773 (1998)]

pay money owed to him for work done during his employment. Plaintiff also sought a declaratory judgment that the employment agreement he signed was void and unenforceable. Defendants counter-claimed that plaintiff had breached a covenant-not-to-compete agreement by engaging in activities prohibited in the agreement. Defendants also counter-claimed that plaintiff had breached a fiduciary duty with respect to commercially sensitive proprietary information and trade secrets of Dine-A-Mate. Defendants moved for dismissal pursuant to N.C.R. Civ. P. 12(b)(6) by reason of a forum selection clause and moved for a preliminary injunction. The trial court denied both motions. In its orders, the trial court made findings that the forum selection clause in the employment agreement signed by plaintiff was the product of unequal bargaining power, that enforcement of the clause would be unfair and unreasonable, that North Carolina is the proper forum for claims arising in this lawsuit and that defendants produced no evidence that plaintiff had disclosed or misappropriated any trade secrets. Defendants appeal.

*Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by Jim W. Phillips, Jr.; Parker, Poe, Adams & Bernstein, L.L.P., by Anthony Fox; and Weil, Gotshal & Manges, LLP, by Helene D. Jaffe and Scott Martin, for defendants appellants.*

*Floyd and Jacobs, L.L.P., by James H. Slaughter and Robert V. Shaver, Jr., for plaintiff appellee.*

SMITH, Judge.

[1] Defendants assign error to the trial court's denial of defendants' motion to dismiss, contending that the trial court should have enforced the forum selection clause in plaintiff's employment agreement with Dine-A-Mate. First, we examine whether the appeal on this issue is properly before the Court. Generally, a party has no right to appeal an interlocutory order. *N.C. Dept. of Transportation v. Page*, 119 N.C. App. 730, 733, 460 S.E.2d 332, 334 (1995). However, "an appeal is permitted under N.C. Gen. Stat. § 1-277(a) and 7A-27(d)(1) if the trial court's decision deprives the appellant of a substantial right [that] would be lost absent immediate review." *Id.* at 734, 460 S.E.2d at 334 (citation omitted). "[A]n immediate appeal is permitted where 'an erroneous order denying a party the right to have the case heard in the proper court would work an injury to the aggrieved party [that] would not be corrected if no appeal was allowed before the final judgment.'" *Perkins v. CCH Computax, Inc.*, 106 N.C. App.

210, 212, 415 S.E.2d 755, 757 (citation omitted), *reviewed on other grounds*, 332 N.C. 149, 419 S.E.2d 574, *decision reversed*, 333 N.C. 140, 423 S.E.2d 780 (1992). In *Perkins*, a case that also involved a forum selection clause, this Court heard the appeal of the trial court's denial of defendant's motion to dismiss. Furthermore, when defendant appealed this Court's decision, our Supreme Court heard the appeal. Likewise, in *Appliance Sales & Service v. Command Electronics Corp.*, 115 N.C. App. 14, 443 S.E.2d 784 (1994), also a forum selection dispute, this Court heard an appeal of the trial court's denial of a motion to dismiss. Based on these precedents, we hold that the trial court's denial of defendants' motion to dismiss is appealable.

[2] Our Supreme Court has held that

> forum selection clauses are valid in North Carolina. A plaintiff who executes a contract that designates a particular forum for the resolution of disputes and then files suit in another forum seeking to avoid enforcement of a forum selection clause carries a heavy burden and must demonstrate that the clause was the product of fraud or unequal bargaining power or that enforcement of the clause would be unfair or unreasonable.

*Perkins*, 333 N.C. at 146, 423 S.E.2d at 784. In reviewing the trial court's decision in a forum selection case, this Court has held that because the disposition of such cases is highly fact-specific, the abuse-of-discretion standard is the appropriate standard of review. *Appliance Sales*, 115 N.C. App. at 21, 443 S.E.2d at 789. " 'The test for abuse of discretion requires the reviewing court to determine whether a decision "is manifestly unsupported by reason," or "so arbitrary that it could not have been the result of a reasoned decision." ' " *Id.* at 21-22, 443 S.E.2d at 789 (citations omitted).

In the case at bar, the trial court made findings on which it based its decision to deny defendants' motion to dismiss. The trial court found, among other things, that plaintiff received no change in compensation, commission, duties, nature of employment or other consideration in exchange for signing the employment agreement. The trial court found that plaintiff was told that he must sign the employment agreement if he wished to keep his job with defendant Dine-A-Mate. It found that the forum selection clause in the agreement was the product of unequal bargaining power and that enforcement of the clause would be unfair and unreasonable. Based upon its findings, the trial court concluded that the forum selection clause in

the employment agreement is unenforceable and that North Carolina is the proper forum for litigation of the lawsuit.

As noted above, in considering this appeal this Court must examine whether the trial court abused its discretion by reaching a conclusion "manifestly unsupported by reason" or "so arbitrary that it could not have been the result of a reasoned decision." *Appliance Sales*, 115 N.C. App. at 21-22, 443 S.E.2d at 789 (citations omitted). The record before us supports the trial court's findings of fact, and the findings of fact support the conclusions of law. We affirm the trial court's denial of defendants' motion to dismiss based on the forum selection clause.

[3] We now turn to defendants' appeal of the trial court's denial of defendants motion for a preliminary injunction. This Court has said in such case that:

> The denial of a preliminary injunction is interlocutory and as such an appeal to this Court is not usually allowed prior to a final determination on the merits. However, review is proper if "such order or ruling deprives the appellant of a substantial right which he would lose absent a review prior to final determination."

*N.C. Electric Membership Corp. v. N.C. Dept. of Econ. & Comm. Dev.*, 108 N.C. App. 711, 716, 425 S.E.2d 440, 443 (1993), citing *A.E.P. Industries v. McClure*, 308 N.C. 393, 400, 302 S.E.2d 754, 759 (1983). In *N.C. Electric Membership Corp.*, this Court recognized that disclosure of trade secrets could affect a substantial right.

> As a general rule, a preliminary injunction "is an extraordinary measure taken by a court to preserve the status quo of the parties during litigation. It will be issued only (1) if a plaintiff is able to show *likelihood* of success on the merits of his case and (2) if a plaintiff is likely to sustain irreparable loss unless the injunction is issued, or if, in the opinion of the Court, issuance is necessary for the protection of a plaintiff's rights during the course of litigation."

*A.E.P.*, 308 N.C. at 401, 302 S.E.2d at 759-60 (citations omitted) (emphasis in *A.E.P.*).

"[O]n appeal from an order of superior court granting or denying a preliminary injunction, an appellate court is not bound by the findings, but may review and weigh the evidence and find facts for itself." *Id.* at 402 , 302 S.E.2d at 760 (citations omitted).

Based on the foregoing and the reasoning that follows, we have reviewed the entire record in this case, and we affirm the trial court's denial of defendants' motion for a preliminary injunction.

The trial court concluded that the covenant not to compete in the employment agreement is governed by the laws of the State of North Carolina. We agree, because enforcement of the covenant would be in violation of the public policy of this state. "In this state a covenant not to compete is valid and enforceable upon a showing that it is: 1. In writing. 2. Made part of a contract of employment. 3. Based on reasonable consideration. 4. Reasonable both as to time and territory. 5. Not against public policy." *A.E.P.*, 308 N.C. at 402-03, 302 S.E.2d at 760 (1983) (citations omitted). " 'The line of demarcation . . . between freedom to contract on the one hand and public policy on the other must be left to the circumstances of the individual case. Just where this line shall be in any given situation is to be determined by the rule of reason. Of necessity, no arbitrary standard can be established in advance for the settlement of all cases.' " *Welcome Wagon, Inc. v. Pender*, 255 N.C. 244, 252, 120 S.E.2d 739, 745 (1961), citing *Beam v. Rutledge*, 217 N.C. 670, 674, 9 S.E.2d 476, 478 (1940). In *A.E.P.*, our Supreme Court cited with approval a New Jersey case saying that a covenant not to compete violates public policy "where the sole purpose is to prevent competition rather than protect a legitimate interest of the employer." *A.E.P.*, 308 N.C. at 403, 302 S.E.2d at 761, citing *Ellis v. Lionikis*, 162 N.J. Super. 579, 394 A.2d 116 (1978).

The contract before us fails the *A.E.P.* test in several ways, including lack of consideration and lack of reasonable restriction as to territory. On the lack of consideration issue, the trial court found, and we agree, that plaintiff received no change in compensation, commission, duties, nature of employment or other consideration in exchange for signing the employment agreement, but rather that he signed it to keep his job. And the North Carolina Supreme Court has held that keeping one's existing job is insufficient consideration for the signing of a covenant not to compete. *See Paper Co. v. McAllister*, 253 N.C. 529, 117 S.E.2d 431 (1960). We recognize, however, that the outcome of the consideration test might well be different if examined under New York law, as defendants urge. What concerns this Court is that, in a case such as this one, application of New York law would be a violation of North Carolina public policy in that the contract before us falls squarely into the category of an attempt to prevent competition rather than to protect a legitimate interest of the employer.

COX v. DINE-A-MATE, INC.

[129 N.C. App. 773 (1998)]

The record before us includes a list of 13 coupon books or discount programs available to the public, not including Dine-A-Mate's coupon books. Defendants do not dispute plaintiff's contention that restaurants or other businesses may participate in such discount books or programs free of charge and that such businesses often participate in more than one book or program at the same time. The trial court concluded that "[i]nformation on merchants who may wish to participate in discount coupon program[s] and potential purchasers is readily available." The trial court also concluded, essentially, that the employment agreement cannot protect trade secrets, because defendants have no trade secrets. We agree with that assessment; the record fully supports it. We note within the record, for example, several affidavits presented by plaintiff. In one affidavit, Martin Mayer, president of Tycoons of America, Inc., publisher of the Triangle Dining coupon book, stated, "I am thoroughly familiar with all aspects of the discount coupon book business and know of no 'trade secrets' that are necessary to compete in this business." In another affidavit, M. Jane Cowey, former office manager of Triad Area Dine-A-Mate, Inc., stated,

> I was actively involved in the creation, solicitation, promotion, publishing, and marketing of the Dine-A-Mate coupon book. Our success in the Triad Area had nothing to do with information or training received from New York. Merchants with an interest in participating in these programs could easily be determined by looking in the obtainable coupon books of competitors or at coupons in the newspaper, handouts, or unsolicited mailings. All merchants in the community, who could be located in numerous directories, are potential participants in the book. The names of groups [that] might be willing to sell the coupon books were available to anybody. We watched the newspaper for announcements regarding groups and officers and would make contact with anyone listed. It was obvious that anyone willing to put in the effort could create, promote, publish, and market a coupon book. There was no aspect in the production of the Dine-A-Mate coupon book that consisted of "trade secrets" or confidential information.

Susan Yeager Montani, former Triangle Area director and former regional director for the southeastern United States for Dine-A-Mate, Inc., stated in an affidavit that she knew of "no confidential information or 'trade secrets' that are necessary to compete in this business." Paul P. Sollicito, former vice president of defendant

COX v. DINE-A-MATE, INC.

[129 N.C. App. 773 (1998)]

Entertainment Publications, Inc., and former national vice president of sales and market development for Dine-A-Mate, Inc., submitted an affidavit saying,

> I have been actively involved in the creation, solicitation for, promotion, publishing, and marketing of discount coupons and coupon programs since 1980. Success in this industry results from being a good salesman. Merchants with an interest in participating in such programs can easily be determined by looking in the readily obtainable coupon books of Dine-A-Mate or its competitors. All merchants in a community, who can be located in phone books, city directories and Chamber of Commerce listings, are potential participants in the coupon book. Anyone in the community is a potential purchaser of a coupon book. Groups [that] may be willing to sell coupon books, such as charitable organizations, churches and schools, are known to those in the industry and can be determined by anyone wishing to locate this information. In short, anyone willing to put in the effort can create, promote, publish, and market a coupon book without specialized training or using confidential information.

N.C. Gen. Stat. § 66-152 defines "trade secret" as

> business or technical information, including but not limited to a formula, pattern, program, device, compilation of information, method, technique, or process that:
>
> a. Derives independent actual or potential commercial value from not being generally known or readily ascertainable through independent development or reverse engineering by persons who can obtain economic value from its disclosure or use; and
>
> b. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

N.C. Gen. Stat. § 66-152(3) (1992). In this case, the record shows that the information defendants claim as trade secrets is "readily ascertainable through independent development."

Affirmed.

Judges LEWIS and MARTIN, John C., concur.