JEFFREY LYNN WALDRON, Plaintiff v. CHRISTOPHER L. BATTEN, COLUMBUS COUNTY SHERIFF, Defendant

No. COA07-1225

(Filed 1 July 2008)

**Firearms and Other Weapons— permit denial—involuntary commitment—statutory requirements not met**

Plaintiff should not have been denied a hand-gun permit based on a commitment to a mental institution where the statutory requirements for involuntary commitment were not met. Ten years earlier, when plaintiff was twenty-one years old, he did not eat or sleep for several days and was depressed after a traumatic break-up with a girlfriend. His mother filed a petition for involuntary commitment, but the doctor did not recommend commitment and the petition was dismissed.

Appeal by plaintiff from order entered 8 May 2007 by Judge Jerry Jolly in Columbus County District Court. Heard in the Court of Appeals 29 April 2008.

*The Odom Firm, PLLC, by Thomas L. Odom, Jr., for plaintiff-appellant.*

*Steven W. Fowler, Columbus County Attorney, for defendant-appellee.*

WALDRON v. BATTEN

[191 N.C. App. 237 (2008)]

CALABRIA, Judge.

Jeffrey Lynn Waldron ("plaintiff") appeals from an order of the trial court affirming Columbus County Sheriff Christopher L. Batten's ("defendant") denial of plaintiff's application for a hand gun permit. We reverse.

On 6 March 2006, plaintiff submitted an application for a hand gun permit to the Columbus County Sheriff's Office. On 14 March 2006, defendant denied plaintiff's application. Subsequently, plaintiff filed a verified petition in Columbus County District Court on 21 March 2007 requesting judicial review of the denial of his permit. Defendant filed a motion to dismiss and motion for summary judgment pursuant to, *inter alia*, N.C. Gen. Stat. § 14-404(c) (2005). According to N.C. Gen. Stat. § 14-404(c), a permit for a hand gun may not be issued to certain individuals including: "[o]ne who has been adjudicated mentally incompetent or has been committed to any mental institution."

In June of 1996, at the age of twenty-one years old, plaintiff experienced a traumatic breakup with his girlfriend. As a result, plaintiff's mother filed an affidavit and petition for involuntary commitment pursuant to N.C. Gen. Stat. §§ 122C-261 and 281 (1996). Based upon plaintiff's mother's affidavit, the magistrate entered a "Findings and Custody Order Involuntary Commitment" and ordered law enforcement officers to take plaintiff into custody and transfer plaintiff to a facility for examination by a physician or eligible psychologist. Based upon the magistrate's order placing plaintiff in a facility to be examined, defendant determined plaintiff was involuntarily committed pursuant to N.C. Gen. Stat. § 14-404(c) and denied plaintiff's application for a permit. On 8 May 2007, the trial judge found defendant's denial of the permit was reasonable and entered an "order of dismissal." From the order of dismissal, plaintiff appeals.

On appeal, the dispositive issue is whether the trial court erred by ruling plaintiff was involuntarily committed to a mental institution. Plaintiff argues the trial court erred in denying his petition because he was never committed to a mental institution. We agree.

I. Standard of Review

We first determine the appropriate standard of review. Plaintiff argues because the trial court's order was a dismissal, the standard of review is *de novo*. Defendant argues the standard of review is abuse of discretion notwithstanding the caption entitled "Order of Dismissal."

WALDRON v. BATTEN

[191 N.C. App. 237 (2008)]

In the instant case, the trial judge made seven findings of fact, a conclusion of law, and ordered and decreed "that a hand gun permit shall not issue to the [plaintiff]." Therefore, we determine the trial judge based his decision on the merits of the case and his decision was in fact an "order" rather than a dismissal. Since the chief district court judge was the fact finder rather than a jury, the standard of review normally is "whether there is competent evidence to support the trial court's findings of fact and whether the findings support the conclusions of law and ensuing judgment." *Sessler v. Marsh*, 144 N.C. App. 623, 628, 551 S.E.2d 160, 163 (2001). However, in the instant case, pursuant to N.C. Gen. Stat. § 14-404(b):

> [a]n appeal from the refusal [of the sheriff] shall lie by way of petition to the chief judge of the district court for the district in which the application was filed. The determination by the court, on appeal, shall be upon the facts, the law, and the reasonableness of the sheriff's refusal, and shall be final.

*Id.*

Thus, the chief district court judge must exercise his judgment and render an order on a case-by-case basis. When a trial court exercises its own judgment in rendering a decision, the abuse of discretion standard and not *de novo* review is applied. *Appliance Sales & Service v. Command Electronics Corp.*, 115 N.C. App. 14, 21, 443 S.E.2d 784, 789 (1994). We now determine whether the trial court abused its discretion by determining the sheriff's denial of plaintiff's application for a hand gun permit was reasonable.

## II. Commitment To A Mental Institution

The record reflects that plaintiff applied for a permit to purchase a hand gun pursuant to N.C. Gen. Stat. § 14-403 (2005), which required a county sheriff to issue hand gun licenses or permits. Pursuant to N.C. Gen. Stat. § 14-404(c)(4), a hand gun permit may not be issued to an individual "who has been adjudicated mentally incompetent or has been committed to any mental institution." The record shows no indication plaintiff voluntarily committed himself to a mental institution. Therefore, if plaintiff was not involuntarily committed to a mental institution, then plaintiff's admittance to a facility for examination by a physician or eligible psychologist would not come under the purview of N.C. Gen. Stat. § 14-404(c)(4). We now determine whether plaintiff was involuntarily committed and thus comes under the purview of N.C. Gen. Stat. § 14-404(c)(4).

In 1996, the requirements for involuntary commitment included taking the individual into custody, then providing transportation "to an area facility for examination by a physician or. eligible psychologist" within twenty-four hours of the individual's arrival at an approved facility. N.C. Gen. Stat. § 122C-263 (1996). If the physician or eligible psychologist determined that the individual was mentally ill and a danger to self or others, according to the statute, the physician or eligible psychologist "shall recommend inpatient commitment, and shall so show on the examination report." *Id.* If inpatient commitment was recommended, the individual was then transferred to a twenty-four hour facility. *Id.*

Moreover, within twenty-four hours of the individual's arrival at a twenty-four hour facility, the individual must have another examination by a physician who was not the same physician as the one who completed the initial examination under the provisions of G.S. 122C-262 or G.S. 122C-263. N.C. Gen. Stat. § 122C-266 (1996). After the second examination, if the doctor determined the individual was mentally ill and. a danger to self or others, the individual must be detained at the twenty-four hour facility pending a district court hearing. *Id.* Therefore, the prerequisites for an involuntary commitment to a mental institution include an examination by two different physicians, and both physicians must determine that the individual was mentally ill and a danger to self or others. Finally, pursuant to N.C. Gen. Stat. § 122C-268 (1996), "[a] hearing shall be held [by a judge] in district court within 10 days of the day the respondent is taken into custody pursuant to G.S. 122C-261(e) or G.S. 122C-262."

In the case *sub judice,* in June of 1996, when plaintiff was twenty-one years old, he experienced a traumatic breakup with his girlfriend. On 22 June 1996, plaintiff's mother filed an affidavit and petition for involuntary commitment pursuant to N.C. Gen. Stat. §§ 122C-261 and 281. On the petition, plaintiff's mother noted that after the breakup with his girlfriend, plaintiff did not eat or sleep for several days and was depressed. Based upon the petition, the magistrate entered a "Findings and Custody Order Involuntary Commitment" under N.C. Gen. Stat. §§ 122C-261 and 281, and ordered that plaintiff be.placed in custody and taken for an "examination by a physician or eligible psychologist." Also on 22 June 1996, plaintiff was placed into custody and transported for an examination to Southeastern Regional Medical Center ("Southeastern") in Lumberton, North Carolina.

Plaintiff's medical records at Southeastern state that plaintiff was admitted on 22 June 1996 for *observation.* On 23 June 1996,

plaintiff was examined by Dr. A. Siddiqui ("Dr. Siddiqui"), who diag-nosed plaintiff with adjustment disorder and emotional disturbance. Plaintiff also was diagnosed as having low potassium levels. However, Dr. Siddiqui did not recommend plaintiff as a candidate for either an inpatient or an outpatient commitment. On 25 June 1996, plaintiff was discharged from Southeastern and Dr. Siddiqui recommended outpatient counseling and therapy. On 2 August 1996, the petition for involuntary commitment was dismissed. According to the record, plaintiff was never readmitted or (I) recommended for either an inpatient or an outpatient commitment by a psychologist or physician; (II) never transferred from Southeastern to any other twenty-four hour facility; (III) never examined by a second psychologist or physician at a twenty-four hour facility nor recommended for inpatient or outpatient commitment; and (IV) never given an opportunity to be heard before a district court judge within ten days of being placed in custody. Therefore, we conclude the requisite statutory requirements for plaintiff's involuntary commitment to a mental institution were never met. Furthermore, the record does not show that plaintiff voluntarily committed himself to a mental institution. Since plaintiff was neither involuntarily nor voluntarily committed to a mental institution, he does not fall under the purview of N.C. Gen. Stat. § 14-404(c)(4). As such, we hold the trial court abused its discretion in ruling that defendant was reasonable in denying plaintiff's application for a permit. Accordingly, we reverse the trial court's order.

Reversed.

Judges WYNN and GEER concur.