IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA15-747

Filed: 5 April 2016

Durham County, No. 14 CVS 5766

SED HOLDING, LLC, Plaintiff,

v.

3 STAR PROPERTIES, LLC, JAMES JOHNSON, TMPS LLC, MARK HYLAND and HOME SERVICING, LLC, Defendants.

Appeal by Defendants from two orders entered 13 February 2015 by Judge Paul C. Ridgeway in Durham County Superior Court. Heard in the Court of Appeals 2 December 2015.

> *Graebe Hanna & Sullivan, PLLC, by Douglas W. Hanna and Mark R. Sigmon, for Plaintiff.*
>
> *Law Offices of Hayes Hofler, P.A., by R. Hayes Hofler, III, for Defendants-Appellants.*

HUNTER, JR., Robert N., Judge.

Defendants appeal following two 13 February 2015 orders: (1) denying Defendants' Rule 12(b)(1) and (3) motion to dismiss for lack of subject matter jurisdiction and improper venue; and (2) granting SED Holding, LLC's ("Plaintiff") motion for preliminary injunction. Defendants contend the trial court erred in denying their motion to dismiss due to a mortgage loan sale agreement they executed with Plaintiff, which contained a forum selection clause for prosecution of the case in

Harris County, Texas. In the alternative, Defendants contend the trial court erred by granting Plaintiff's motion for preliminary injunction because Plaintiff has not demonstrated a likelihood of success on the merits of its claim, and has not demonstrated it will suffer irreparable harm without a preliminary injunction. We affirm the trial court.

## I. Factual and Procedural History

Plaintiff is a North Carolina corporation with its principal place of business in Durham County, North Carolina. Defendant 3 Star Properties, LLC ("3 Star") is a corporation organized under the laws of Nevada with its principal place of business in Buncombe County, North Carolina. Defendant James Johnson ("Johnson") is a managing member of 3 Star. He and two other 3 Star managing members reside in Buncombe County.

Plaintiff and 3 Star are in the business of buying and selling pools of residential mortgage loans. In May 2014, Plaintiff negotiated to buy 1,235 mortgages from 3 Star for $13,880,171.00. The total outstanding value of the mortgages was $71,180,364.00. Plaintiff made a $300,000.00 refundable deposit as earnest money for the sale.

On 3 June 2014, three of Plaintiff's principals met with Johnson in an Asheville, North Carolina hotel. Afterwards, Plaintiff's attorney drafted a "Mortgage Loan and Sale Agreement" ("LSA") and other documents for the sale. On 20 June

2014, the parties signed the LSA in North Carolina and Plaintiff contracted to buy the pooled mortgages from 3 Star. The parties agreed the $13,800,171.00 purchase price was to be paid as follows: (i) $2,000,000.00 at the closing, less the $300,000.00 earnest money; and (ii) the remaining $11,880,171.00 principal balance to be paid in accordance with a promissory note.

Under the promissory note, the parties agreed Plaintiff would pay the $2,000,000.00 closing money on or before 11 July 2014. They also agreed Plaintiff would pay the $11,880,171.00 principal balance by 31 December 2014 with six-percent interest. Further, the parties agreed the promissory note would be "construed . . . and governed by the laws of the State of Texas."

Pursuant to the LSA, the parties agreed to a forum selection clause, which states the following:

> This Agreement shall be construed in accordance with the laws of the Harris County, State of Texas, and its right and liabilities of the parties hereto, including any assignees, shall be determined in accordance with the laws of Harris County, State of Texas, except to the extent that it is mandatory that the laws of some other jurisdictions may apply. Any litigation arising from this transaction shall be filed in District Court in Harris County, Texas.

A dispute arose over the mortgage sale. Plaintiff claimed the entire sale was based on Defendants' representations that each mortgage was legitimate, secured by real property, and owned by 3 Star. Plaintiff contends these representations were false and 3 Star only owned a few of the mortgages. Defendants contend Plaintiff

defaulted after the closing, and "never really attempted to sell" the non-performing mortgages it acquired in the mortgage pool.

On 1 December 2014, Plaintiff filed a verified complaint in Durham County Superior Court raising the following claims for relief: fraud in the inducement, "Declaratory Judgment of No Meeting of the Minds/Mistake of Fact," breach of contract, fraud, negligent misrepresentation, and civil conspiracy. Additionally, Plaintiff's complaint contained a Rule 65 motion for a temporary restraining order and preliminary injunction, alleging "Plaintiff is reasonably likely to succeed on the merits of its claim," and "Defendants' conduct is causing [Plaintiff] immediate, irreparable harm in that the [mortgages] are being irrevocably foreclosed on, sold, or otherwise transferred or affected." In its prayer for relief, Plaintiff sought damages, a temporary restraining order, and preliminary injunctive relief.

On 10 December 2014, Defendants filed a motion to dismiss for lack of subject matter jurisdiction and improper venue under Rule 12(b)(1) and (3), and alleged the trial court lacked jurisdiction. The parties were heard 13 February 2015 on Defendants' motion to dismiss and Plaintiff's motion for preliminary injunctive relief. That same day, the trial court issued an order denying Defendants' motion to dismiss, and a second order granting Plaintiff's motion for preliminary injunctive relief. In the injunctive order, the trial court prohibited Defendants from "selling . . . or otherwise making any dispositions of any of the [mortgages] sold to SED." Further,

the court ordered Defendant to place the monies from the sale in escrow pending case resolution, and ordered Plaintiff to post a $100,000.00 bond to protect Defendants' rights. Defendants timely filed notice of appeal contesting both 13 February 2015 orders.

After settlement of the record, the parties filed their appellate briefs. On 23 November 2015, Defendants filed a motion for sanctions under Appellate Rule 34. Defendants contend Plaintiff "asserts argument in its brief which has no basis in fact or law" and ask our Court to vacate the preliminary injunction. On 30 November 2015, Plaintiff filed a response in opposition to Defendants' motion. We disagree with Defendants' contentions and deny their motion to dissolve the preliminary injunction or order sanctions for the following reasons.

## II. Jurisdiction

Although "a denial of a motion to dismiss is an interlocutory order, where the issue pertains to applying a forum selection clause, our case law establishes that defendant may nevertheless immediately appeal the order because to hold otherwise would deprive him of a substantial right." *Hickox v. R&G Group Intern., Inc.*, 161 N.C. App. 510, 511, 588 S.E.2d 566, 567 (2003) (citation omitted). Our Court has jurisdiction to review Defendants' appeal from the 13 February 2015 order denying their motion to dismiss. N.C. Gen. Stat. §§ 1-277, 7A-27(b)(3)(a).

Second, "[a] preliminary injunction is interlocutory in nature . . . which restrains a party pending final determination on the merits." *A.E.P. Industries, Inc. v. McClure*, 308 N.C. 393, 400, 302 S.E.2d 754, 759 (1983). Therefore, an appellate court does not have jurisdiction to hear an appeal from a preliminary injunction ruling unless the trial court's ruling "deprives the appellant of a substantial right which he would lose absent a review prior to final determination." *Id.*; s*ee also Barnes v. St. Rose Church of Christ*, 160 N.C. App. 590, 591–92, 586 S.E.2d 548, 550 (2003). An appellant's right to use and control its assets is a substantial right that warrants immediate review when that right is prohibited during the pendency of case resolution. *See Scottish Re Life Corp. v. Transamerica Occidental Life Ins. Co.*, 184 N.C. App. 292, 294–95, 647 S.E.2d 102, 104 (2007) ("Given the large amount of money at issue [\$30,000,000.00] . . . the fact that the trial court impinged appellant's right to the use and control of those assets, and the unavoidable and lengthy delays . . . we hold the appellant must be granted its appeal to preserve a substantial right."). Accordingly, Defendants' substantial right to control assets related to the mortgage sale is affected by the preliminary injunction, and this Court has jurisdiction to review Defendants' appeal from the preliminary injunction order.

### III. Standard of Review

The disposition of a case involving a forum selection clause "is highly fact-specific." *Appliance Sales & Service, Inc. v. Command Electronics Corp.*, 115 N.C.

App. 14, 21, 443 S.E.2d 784, 789 (1994). Our Court reviews an order denying a motion to dismiss for improper venue in such cases using the abuse of discretion standard. *Id.* (citation omitted). "The test for abuse of discretion requires the reviewing court to determine whether a decision is manifestly unsupported by reason, or so arbitrary that it could not have been the result of a reasoned decision." *Id.* at 21–22, 443 S.E.2d at 789 (citations and internal quotation marks omitted).

"Our standard of review from a preliminary injunction is essentially *de novo.*" *Wilson v. North Carolina Dept. of Commerce*, ___ N.C. App. ___, ___, 768 S.E.2d 360, 364 (2015) (citation and internal quotation marks omitted). An appellate court is not bound by the trial court's findings, and it may review and weigh the evidence and find facts for itself. *A.E.P. Industries, Inc.*, 308 N.C. at 402, 302 S.E.2d at 760 (citation omitted). However, "a trial court's ruling on a motion for a preliminary injunction is presumed to be correct and the party challenging the ruling bears the burden of showing it was erroneous." *VisionAIR, Inc. v. James*, 167 N.C. App. 504, 507, 606 S.E.2d 359, 362 (2004) (citations omitted).

## IV. Analysis

### A. Forum Selection Clause

Historically, North Carolina case law was unclear about the enforceability of forum selection clauses that fix venue in other states. In 1992, our Supreme Court held forum selection clauses are valid, enforceable, and consistent with public policy

that also allowed choice of law and consent to jurisdiction provisions. *Perkins v. CCH Computax, Inc.*, 333 N.C. 140, 146, 423 S.E.2d 780, 784 (1992) (citing *Johnston County v. R.N. Rouse & Co.,* 331 N.C. 88, 414 S.E.2d 30 (1992)). The Court reasoned as follows:

> A plaintiff who executes a contract that designates a particular forum for the resolution of disputes and then files suit in another forum seeking to avoid enforcement of a forum selection clause carries a heavy burden and must demonstrate that the clause was the product of fraud or unequal bargaining power or that enforcement of the clause would be unfair or unreasonable.

*Perkins*, 333 N.C. at 146, 423 S.E.2d at 784.

In 1993 our legislature enacted N.C. Gen. Stat. § 22B-3, under Chapter 22 "Contracts Against Public Policy," Article I "Invalid Agreements." Section 22B-3 generally prohibits forum selection clauses and states the following:

> Except as otherwise provided in this section, any provision in a contract entered into in North Carolina that requires the prosecution of any action or the arbitration of any dispute that arises from the contract to be instituted or heard in another state is against public policy and is void and unenforceable. This prohibition shall not apply to non-consumer loan transactions or to any action or arbitration of a dispute that is commenced in another state pursuant to a forum selection provision with the consent of all parties to the contract at the time that the dispute arises.

N.C. Gen. Stat. § 22B-3. Therefore, forum selection clauses in North Carolina are generally disfavored, "against public policy," and "void and unenforceable" unless they appear in "non-consumer loan transactions." Our Court has defined a non-

consumer loan transaction as "one that is *not* extended to a natural person, and *not* used for 'family, household, personal or agricultural purposes.'" *L.C. Williams Oil Co. v. NAFCO Capital Corp.*, 130 N.C. App. 286, 502 S.E.2d 415 (1998) (citing Black's Law Dictionary 937 (6th ed. 1990)) (emphasis in original).

Here, both parties concede they are not natural persons. Defendants contend the mortgage sale is a non-consumer loan because it is a "conditional sale" that anticipates a secured loan. Conversely, Plaintiff contends the transaction is a "purchase sale," not a loan, and the forum selection clause is unenforceable because it and the LSA are the product of fraud.

A loan is "an agreement to advance money or property in return for the promise to make payments therefor, whether such agreement is styled as a loan, credit card, line of credit, a lease or otherwise." *L.C. Williams Oil Co.,* 130 N.C. App. at 289, 502 S.E.2d at 417 (citing N.C. Gen. Stat § 66-106(2)). A sale is "[t]he transfer of property or title for a price." Black's Law Dictionary (10th ed. 2014). A sale is comprised of four elements: "(1) parties competent to contract, (2) mutual assent, (3) a thing capable of being transferred, and (4) a price in money paid or promised." *Id.*

Here, the plain language of the LSA contemplates a "sale" of pooled mortgages, not a loan. Pursuant to the LSA and promissory note, Plaintiff paid money at closing, less earnest money, and promised to pay the remaining principal plus interest within six months of the sale. Moreover, Plaintiff contends the forum selection clause is the

product of fraud, which taken as true, invalidates the clause. *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972). These considerations and North Carolina law are in line with Texas law, which Defendants seek to apply through enforcement of the forum selection clause.

Like North Carolina, Texas uses an abuse of discretion standard in reviewing a trial court's refusal to enforce a forum selection clause. *In re Lyon Financial Services, Inc.*, 257 S.W.2d 228 (Tex. 2008) (per curiam). Based upon United States Supreme Court precedent, Texas and North Carolina will refuse to enforce a forum selection clause if a challenging party can "clearly show that (1) enforcement would be unreasonable or unjust, (2) the clause is invalid for reasons of fraud or overreaching, (3) enforcement would contravene a strong public policy of the forum where the suit was brought, or (4) the selected forum would be seriously inconvenient for trial." *Id.* at 231–232; *see M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. at 15; *see Parson v. Oasis Legal Finance, LLC*, 214 N.C. App. 125, 131–32, 715 S.E.2d 240, 244–45 (2011); *see also Perkins*, 333 N.C. at 143–44, 423 S.E.2d at 783.

The Texas forum selection clause which Defendants seek to enforce is unenforceable in Texas. It is a longstanding principle in Texas that "it is utterly against public policy to permit bargaining in [Texas] about depriving courts of jurisdiction, expressly conferred by statute, over particular causes of action and defenses." *International Travelers' Ass'n v. Branum*, 109 Tex. 543, 548, 212 S.W. 630,

632 (Tex. 1919). Texas law allows a plaintiff "to bring his action in the county of his own residence or in any county in which the defendant had an agent or representative." *Fidelity Union Life Ins. Co. v. Evans*, 477 S.W.2d 535, 537 (Tex. 1972) (discussing *International Travlers' Ass'n* and Texas venue statues). A contract with a forum selection clause that selects a specific Texas county cannot override state statutory law that allows for suit in multiple counties. *See Id.* This longstanding principal is still good law in Texas. *See International Travlers' Ass'n*, 109 Tex. at 548, 212 S.W. at 632 ("It follows that the stipulation for exclusive venue in Dallas county will not be enforced"); *see e.g. Fidelity Union Life Ins. Co.*, 477 S.W.2d 535; *Leonard v. Paxson*, 654 S.W.2d 440 (Tex. 1983); *Ziegelmeyer v. Pelphrey*, 133 Tex. 73, 125 S.W.2d 1038 (Tex. 1939); *In re AIU Ins. Co.*, 148 S.W.3d 109 (Tex. 2004).

In light of these considerations, the record, and Plaintiff's showing of fraud in its verified complaint, we cannot hold the trial court abused its discretion by refusing to enforce the forum selection clause, and denying Defendants' motion to dismiss.

## B. Preliminary Injunction

In the alternative, Defendants contend the trial court committed error by granting Plaintiff's preliminary injunction. We disagree.

A preliminary injunction is "an extraordinary measure taken by a court to preserve the status quo of the parties during litigation." *Ridge Community Investors, Inc. v. Berry*, 293 N.C. 688, 701, 239 S.E.2d 566, 574 (1977). A trial court will only

issue a preliminary injunction under the following circumstances:

> (1) if a plaintiff is able to show likelihood of success on the merits of his case and (2) if a plaintiff is likely to sustain irreparable loss unless the injunction is issued, or if, in the opinion of the Court, issuance is necessary for the protection of a plaintiff's rights during the course of litigation.

*Id.* (citations omitted).

Defendants, as the party challenging the preliminary injunction, bear the burden of overcoming our presumption that the trial court's ruling is correct, and must show the ruling was erroneous. *VisionAIR, Inc.*, 167 N.C. App. at 507, 606 S.E.2d at 362. However, this Court is "not bound by the trial court's findings" and it "review[s] and weigh[s] the evidence and find[s] facts for itself." *A.E.P. Industries, Inc.*, 308 N.C. at 402, 302 S.E.2d at 760.

Plaintiff's verified complaint contains numerous affidavits, emails from Defendants, and various representations that generally show 3 Star represented itself as the rightful owner and title holder of the pooled mortgages at issue. Defendants contend this record evidence does not amount to Plaintiff's showing of a likelihood of success on the merits, and contends the "LSA, by itself" binds Plaintiff to buy the mortgages "as-is." However, this lone clause in the LSA is not an absolute defense to Plaintiff's numerous claims, which are supported by what Defendants describe as "extensive documentary evidence."

Plaintiff claims it would incur irreparable harm if Defendants were able to

liquidate the monies or mortgages arising from the mortgage sale. Prohibiting Defendants from moving these assets for the pendency of litigation maintains the status quo and protects the monetary and injunctive relief Plaintiff seeks. Moreover, Defendants' rights are protected by the $100,000.00 bond posted by Plaintiff. Therefore, Defendants have failed to carry their burden of proving the trial court's ruling was erroneous.

## V. Conclusion

For the foregoing reasons we affirm the trial court.

AFFIRMED.

Judges Stephens and Judge Inman concur.