IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-498

No. COA21-419

Filed 19 July 2022

Richmond County, No. 20 CVS 473

DORIS WALL, PATRICIA SMITH, COREY DAVIS, MARIO ROBINSON, TIMOTHY SMITH, GLORIA GILLIAM, MICHAEL WADDELL, TERIA BOUKNIGHT, JUNE BARBOUR, EMMANUEL SMITH, DONQUIS JONES, DIANNE KIRKPATRICK, ASBURY FORTE, III, ARETHA HAYES and POONAM PATEL, Plaintiffs,

v.

AUTOMONEY, INC., Defendant.

Appeal by Defendant from Order entered 15 January 2021 by Judge Dawn M. Layton in Richmond County Superior Court. Heard in the Court of Appeals 8 February 2022.

*Brown, Faucher, Peraldo & Benson, PLLC, by James R. Faucher and Jeffrey K. Peraldo, for plaintiffs-appellees.*

*Womble Bond Dickinson (US) LLP, by Michael Montecalvo and Scott D. Anderson, and Law Offices of L. W. Cooper Jr., LLC, by Lindsey W. Cooper Jr., for defendant-appellant.*

HAMPSON, Judge.

**Factual and Procedural Background**

¶ 1 Automoney, Inc. (Defendant) appeals from an Order entered 15 January 2021 denying Defendant's Motion to Dismiss under N.C.R. Civ. P. 12(b)(2), (b)(3) and (b)(6).

The Record before us—including the factual allegations contained in Plaintiffs' Complaint—tends to reflect the following:

Defendant is a South Carolina corporation who makes consumer car title loans to residents of North Carolina. Plaintiffs are residents of North Carolina who entered into loan agreements with Defendant in amounts ranging from $621.00 to $3,520.00. Defendant based the amount of the loan on the value of an individual Plaintiff's car and placed a lien on the vehicle to secure the loan. Defendant registered these liens with the North Carolina Department of Motor Vehicles. Plaintiffs' loan agreements included an annual percentage rate (APR) set by Defendant that ranged from 129% to 229%. All the loan agreements also included a choice-of-law provision that read, in relevant part:

> As Lender is a regulated South Carolina consumer finance company and you, as Borrower, have entered into this Agreement in South Carolina, this Agreement shall be interpreted, construed, and governed by and under the laws of the State of South Carolina, without regard to conflicts of law rules and principles . . . that would cause the application of the laws of any jurisdiction other than the State of South Carolina.[1]

In 2018, this choice-of-law provision was updated to include a choice-of-venue provision that stated, in relevant part:

---

[1] This language is from the earliest version of the choice-of-law provision. In 2019, Defendant required customers to sign a completely separate document titled "Attention North Carolina Customers Acknowledgement of South Carolina Law and Waiver of Claims Form" that contained a similar choice-of-law provision.

> In the event that any dispute whatsoever arises between the
> Parties . . . the Dispute shall be brought exclusively in the courts
> of competent jurisdiction located in the State of South Carolina,
> and the exclusive jurisdiction of the state and federal courts
> located therein. . . .

Ten out of the fifteen Plaintiffs' agreements included this choice-of-venue provision.

¶ 3 On 4 June 2020, Plaintiffs filed a Complaint in Richmond County Superior Court alleging three causes of action against Defendant for violations of N.C. Gen. Stat. § 53-165 et. seq.—the North Carolina Consumer Finance Act (NCCFA)—, N.C. Gen. Stat. § 75-1.1—Unfair and Deceptive Trade Practices Act (UDTPA)—, and alternatively, N.C. Gen. Stat. § 24-1.1, et seq.—Usury. Specifically, Plaintiffs alleged Defendant violated the NCCFA by charging each Plaintiff annual interest rates that far exceed the maximum annual rate of interest allowed by the statute; alternatively, violated the usury laws by soliciting Plaintiffs for the loans, discussing and negotiating the loans, offering to make Plaintiffs loans, and receiving each Plaintiffs' acceptance to the loans while Plaintiffs were in the State of North Carolina; and violated the UDTPA by knowingly extending usurious loans to North Carolina residents. Plaintiffs sought a declaratory judgment declaring the loans and security interests thereon to be void and unenforceable and to recover statutory damages in an amount not in excess of $75,000.00 each.

¶ 4 Moreover, in their Complaint, Plaintiffs alleged:

3. This Court has jurisdiction over Defendant pursuant to N.C. G.S. § 1-75.4 in that at all times relevant to the events and transactions alleged herein, Defendant, via the internet, cellular telephone and other media and communication methods solicited, marketed, advertised, offered, accepted, discussed, negotiated, facilitated, collected on, threatened enforcement of, and foreclosed upon automobile title loans with Plaintiffs and other North Carolina citizens . . . Plaintiffs further allege that, for a considerable amount of time prior to the events and transactions with Plaintiffs as alleged herein, Defendant had regular, ongoing, continuous and systematic contacts with the State of North Carolina and its citizens . . . such that this Court has personal jurisdiction over Defendant.

7. Defendant has knowingly and intentionally constructed and engineered it[s] internet advertising to ensure that Defendant's South Carolina office locations appear as internet search results when a North Carolina consumer conducts an internet search for a "car title loan" or similar terms.

8. Defendant has purposefully established its business locations just across the North Carolina-South Carolina state line to avoid the application of North Carolina law to loan contracts Defendant enters into with North Carolina residents, such as Plaintiffs.

On 22 July 2020, Defendant filed a Motion to Dismiss alleging: (1) Defendant was not subject to personal jurisdiction in North Carolina and the action should be dismissed pursuant to N.C.R. Civ. P. 12 (b)(2); (2) venue was improper in Richmond County under N.C.R. Civ. P. 12(b)(3) and the matter was required to be brought in South Carolina based on the forum selection clause contained in ten out of the fifteen named Plaintiffs' loan agreements; and, (3) the Complaint failed to state a claim on which relief under North Carolina law could be granted under N.C.R. Civ. P. 12(b)(6)

based on the choice-of-law clauses in the Plaintiffs' loan agreements. In support of its Motion to Dismiss, Defendant also filed the Affidavit of Linda Derbyshire, (Derbyshire) the owner, executive officer, and manager of Defendant. Derbyshire denied Plaintiffs' allegations that Defendant solicited, marketed, advertised, offered, accepted, discussed, negotiated, facilitated, or otherwise made any title loans in North Carolina. Defendant also attached Plaintiffs' loan agreements showing the choice-of-law provisions and forum selection clauses.

¶ 6     Plaintiffs subsequently filed Affidavits in opposition to Defendant's Motion to Dismiss. In these affidavits, Plaintiffs rebuffed Derbyshire's claim that Defendant had no contacts with North Carolina. For example, Plaintiffs submitted, *inter alia*, an authenticated page from Defendant's website that specifically targeted North Carolina residents and claimed to have made "thousands" of loans to North Carolinians and be the "trusted name in title loans" in North Carolina; an affidavit from an assistant manager and loan officer for Defendant who stated Defendant mailed loan solicitation flyers into North Carolina to both current and former borrowers and regularly engaged in phone conversations with North Carolina residents regarding Defendant's loans; an affidavit from the Owner and Managing Member of the North Carolina publication "Steals & Deals" who—from February 2013 to May 2019—ran a weekly advertisement for Defendant's title loans to residents of North Carolina; and a manager of Associates Asset Recovery, LLC, a

North Carolina business, who recovered 442 motor vehicles for Defendant in North Carolina over the course of four years.

On 30 November 2020 Defendant's Motion to Dismiss came on for hearing and the trial court denied the Motions to Dismiss by Order entered 15 January 2021. Defendant filed Notice of Appeal on 10 February 2021.

### **Appellate Jurisdiction**

Here, the trial court's Order constitutes three separate interlocutory rulings denying Defendant's Motion to Dismiss alleging lack of personal jurisdiction, improper venue, and failure to state a claim. "Generally, the denial of a motion to dismiss is not immediately appealable to this Court because it is interlocutory in nature." *McClennahan v. N.C. School of the Arts*, 177 N.C. App. 806, 808, 630 S.E.2d 197, 199 (2006) (citation and quotation omitted). "An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." *Id.* "However, N.C. Gen. Stat. § 1-277 allows a party to immediately appeal an order that either (1) affects a substantial right or (2) constitutes an adverse ruling as to personal jurisdiction." *Id.*

First, the denial of Defendant's Motion asserting lack of personal jurisdiction is clearly immediately appealable under Section 1-277(b). *See Cohen v. Cont'l Motors, Inc.*, 279 N.C. App. 123, 2021-NCCOA-449, ¶ 16-17, *disc. rev. denied*, 868 S.E.2d 859

(2022); *see also A.R. Haire, Inc. v. St. Denis*, 176 N.C. App. 255, 257–58, 625 S.E.2d 894, 898 (2006) ("[M]otions to dismiss for lack of personal jurisdiction affect a substantial right and are immediately appealable").

¶ 10        Second, we have previously recognized an order denying a motion based on improper venue and which asserts venue is proper elsewhere may affect a substantial right. *Thompson v. Norfolk & Southern Ry.*, 140 N.C. App. 115, 121-122, 535 S.E.2d 397, 401 (2000). Likewise, orders addressing the validity of a forum selection clause also affect a substantial right. *US Chem. Storage, LLC v. Berto Constr., Inc.*, 253 N.C. App. 378, 381, 800 S.E.2d 716, 719 (2017). Thus, Defendant's appeal from the denial of its motion based on improper venue is also properly before us.

¶ 11        Third, immediate appealability of the denial of Defendant's Motion to Dismiss under Rule 12(b)(6) based on the assertion of a choice-of-law clause is less clear. Nevertheless, in several other cases involving choice-of-law related issues, this Court has elected to review the matter under writ of certiorari. *Harco Nat. Ins. Co. v. Grant Thornton LLP*, 206 N.C. App. 687, 691, 698 S.E.2d 719, 722 (2010); *Stetser v. TAP Pharm. Prod., Inc.*, 165 N.C. App. 1, 12, 598 S.E.2d 570, 579 (2004); *United Virginia Bank v. Air-Lift Assocs., Inc.*, 79 N.C. App. 315, 319, 339 S.E.2d 90, 92 (1986). Defendant here has also filed a Petition for Writ of Certiorari in the event we determine there is no immediate right to appeal. Given our prior practice, the fact the choice of law issue is substantially related to the issue of venue as well as, to a

lesser extent, personal jurisdiction which are both properly before us, and the fact that all three issues address vital preliminary questions impacting both this litigation and other related litigation pending in our Courts which would benefit from an early decision on these threshold matters, in our discretion we grant Defendant's Petition for Writ of Certiorari to ensure our appellate jurisdiction over the entirety of Defendant's appeal and turn to the merits of the appeal.

## Issues

¶ 12        The issues on appeal are whether the trial court erred by denying Defendant's Motion to Dismiss pursuant to North Carolina Rules of Civil Procedure: (I) 12(b)(2) for lack of personal jurisdiction when Defendant purposefully availed itself of the privilege of doing business in North Carolina; (II) 12(b)(6) for failure to state a claim when Plaintiffs' claims are based on North Carolina law and Plaintiffs' loan contracts contain a choice-of-law provision stating South Carolina law should apply; and (III) 12(b)(3) for improper venue when Plaintiffs filed suit in Richmond County, North Carolina, despite the inclusion of a forum selection clause in Plaintiffs' loan contracts stating suits should be brought in South Carolina and the fact that only two out of fifteen Plaintiffs resided in Richmond County.

## Analysis

### I. Personal Jurisdiction

A. Standard of Review

¶ 13        "The standard of review to be applied by a trial court in deciding a motion

under Rule 12(b)(2) depends upon the procedural context confronting the court."

*Banc of Am. Secs. LLC v. Evergreen Int'l Aviation, Inc.*, 169 N.C. App. 690, 693, 611

S.E.2d 179, 182 (2005).

> Typically, the parties will present personal jurisdiction issues in one of three procedural postures: (1) the defendant makes a motion to dismiss without submitting any opposing evidence; (2) the defendant supports its motion to dismiss with affidavits, but the plaintiff does not file any opposing evidence; or (3) both the defendant and the plaintiff submit affidavits addressing the personal jurisdiction issues.

*Id.*    In this case, the parties submitted dueling affidavits and other discovery

materials in support of their respective jurisdictional arguments; therefore, this case

falls into the third category.  *See id.*

¶ 14        If the parties "submit dueling affidavits[,] . . . the court may hear the matter

on affidavits presented by the respective parties, . . . [or] the court may direct that

the matter be heard wholly or partly on oral testimony or depositions."  *Id.* at 694,

611 S.E.2d at 183 (second and third alterations in original; citations and quotation

marks omitted); *see also Bruggeman v. Meditrust Acquisition Co.*, 138 N.C. App. 612,

615, 532 S.E.2d 215, 217 (2000) ("If the exercise of personal jurisdiction is challenged

by a defendant, a trial court may hold an evidentiary hearing including oral testimony

or depositions or may decide the matter based on affidavits." (citation omitted)).  In

addition, where "defendants submit some form of evidence to counter plaintiffs'

allegations, those allegations can no longer be taken as true or controlling and plaintiffs cannot rest on the allegations of the complaint." *Bruggeman*, 138 N.C. App. at 615-16, 532 S.E.2d at 218 (citations omitted).

¶ 15        Where the trial court elects to decide the motion to dismiss on competing affidavits, "the plaintiff has the initial burden of establishing prima facie that jurisdiction is proper. Of course, this procedure does not alleviate the plaintiff's ultimate burden of proving personal jurisdiction at an evidentiary hearing or at trial by a preponderance of the evidence." *Id.* at 615, 532 S.E.2d at 217 (citations omitted). "If the trial court chooses to decide the motion based on affidavits, the trial judge must determine the weight and sufficiency of the evidence presented in the affidavits much as a juror." *Banc of Am. Secs. LLC*, 169 N.C. App. at 694, 611 S.E.2d at 183 (alterations, citation, and quotation marks omitted).

¶ 16        Thus, in this context, "[t]he standard of review of an order determining personal jurisdiction is whether the findings of fact by the trial court are supported by competent evidence in the record[.]" *Bell v. Mozley*, 216 N.C. App. 540, 543, 716 S.E.2d 868, 871 (2011) (second alteration in original; quotation marks omitted) (quoting *Replacements, Ltd. v. Midwesterling*, 133 N.C. App. 139, 140-41, 515 S.E.2d 46, 48 (1999)). "We review de novo the issue of whether the trial court's findings of fact support its conclusion of law that the court has personal jurisdiction over defendant." *Id.* (citation omitted).

The North Carolina Supreme Court has held

> that a two-step analysis must be employed to determine whether a non-resident defendant is subject to the in personam jurisdiction of our courts. First, the transaction must fall within the language of the State's "long-arm" statute. Second, the exercise of jurisdiction must not violate the due process clause of the fourteenth amendment to the United States Constitution.

*Tom Togs, Inc. v. Ben Elias Indus. Corp.*, 318 N.C. 361, 364, 348 S.E.2d 782, 785 (1986) (citations omitted). In this case, the parties appear to agree North Carolina's "long-arm" statute is applicable to this case. Indeed, the parties focus on the question of whether the exercise of personal jurisdiction in this case is consistent with the Due Process Clause of the Fourteenth Amendment.

B. Specific Personal Jurisdiction

The Supreme Court of the United States recently addressed the issue of a state court's authority to assert personal jurisdiction over an out-of-state Defendant under the Fourteenth Amendment in *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 209 L. Ed. 2d 225 (2021). "The Fourteenth Amendment's Due Process Clause limits a state court's power to exercise jurisdiction over a defendant." *Id.* at 1024, 209 L. Ed. at 233. Our courts "recogniz[e] two kinds of personal jurisdiction: general . . . jurisdiction and specific . . . jurisdiction." *Id.* (citing *Goodyear Dunlop Tires Operations, S. A. v. Brown*, 564 U.S. 915, 919, 180 L. Ed. 2d 796, 803 (2011)). Specific jurisdiction "covers defendants less intimately connected with a State, but

only as to a narrower class of claims. The contacts needed for this kind of jurisdiction often go by the name 'purposeful availment.' " *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 85 L. Ed. 2d 528, 542 (1985)). "The defendant . . . must take 'some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State.' " *Id.* (bracket in original) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 2 L. Ed. 2d 1283, 1298 (1985)). "The contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.' " *Id.* at 1025, 209 L. Ed. 2d at 234 (citation omitted). "The[se] [contacts] must show that the defendant deliberately 'reached out beyond' its home—by, for example, 'exploi[ting] a market' in the forum State or entering a contractual relationship centered there.' " *Id.* (second bracket in original) (quoting *Walden v. Fiore*, 571 U.S. 277, 285, 188 L. Ed. 2d 12, 20 (2014)). *See also, Travelers Health Ass'n v. Va.*, 339 U.S. 643, 647, 94 L. Ed. 1154, 1161 (1950) (concluding "where business activities reach out beyond one state and create continuing relationships and obligations with citizens of another state," a business has consented to jurisdiction in the latter state.). "Yet even then . . . the forum State may exercise jurisdiction in only certain cases. The plaintiff's claims . . . 'must arise out of or relate to the defendant's contacts' with the forum." *Id.* (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cty.*, 137 S. Ct. 1773, 1780, 198 L. Ed. 2d 395, 403 (2017)).

¶ 19        For example, in *Travelers Health Association v. Virginia*, the United States Supreme Court held Virginia could properly exercise jurisdiction over a Nebraska corporation where the defendant did not engage in mere isolated or short-lived transactions, but rather, systematically and widely entered into contracts with citizens of Virginia. 339 U.S. at 648, 94 L. Ed. at 1161. In rendering its decision, the Court considered the following significant facts: at the time of the suit, the defendant had 800 contracts with Virginia citizens; the defendant sent targeted mail solicitations to Virginians; new members obligated themselves to pay periodic assessments; the defendant had a referral system whereby members could refer other Virginia citizens; the defendant could enter the state to investigate claims for losses; and the Virginia courts were available to them in seeking to enforce obligations created by the insurance policies. *Id.*

¶ 20        Here, the trial court's Findings of Fact, which are supported by the competent evidence found in Plaintiffs' Affidavits, show, just as in *Travelers*, the Defendant had substantial contacts with North Carolina. For example, the trial court found: Defendant holds itself out as having made "thousands" of loans to North Carolinians; calls potential borrowers who are located in North Carolina; offers loans over the phone to North Carolinians and receives acceptances of its loan offers by telephone from North Carolinians; instructs North Carolinians to travel out of state to its stores; creates continuing obligations between itself and borrowers in North Carolina;

perfects security interests using the North Carolina Division of Motor Vehicles; pays borrowers to refer new borrowers from North Carolina; sends written solicitations into North Carolina; makes collections calls into North Carolina; and directs others to enter into North Carolina to take possession of collateral motor vehicles.

¶ 21    Thus, applying *Ford* and *Travelers*, it is not unreasonable to subject Defendant to suit in North Carolina because Defendant deliberately and systematically 'reached out beyond' South Carolina to enter into loan agreements with thousands of North Carolina citizens. *See Ford Motor Co.*, 141 S. Ct. at 1025, 209 L. Ed. 2d at 234. Therefore, the trial court appropriately concluded the exercise of personal jurisdiction in North Carolina over Defendant does not offend the Due Process Clause of the Fourteenth Amendment. Consequently, the trial court did not err in denying Defendant's Motion under Rule 12(b)(2) of the North Carolina Rules of Civil Procedure.

## II.    Choice-of-Law Provision and Failure to State a Claim

¶ 22    Next, Defendant contends the trial court erred in denying Defendant's Motion to Dismiss under Rule 12(b)(6). Defendant argues Plaintiffs' contracts contain a

choice-of-law provision mandating the application of South Carolina law and, thus, precluding Plaintiff's claims arising from North Carolina law.[2]

¶ 23 "The test on a motion to dismiss for failure to state a claim upon which relief can be granted is whether the pleading is legally sufficient." *Shoffner Indus., Inc. v. W. B. Lloyd Constr. Co.*, 42 N.C. App. 259, 263-264, 257 S.E.2d 50, 54 (1979). "A complaint may be dismissed on motion filed under Rule 12(b)(6) if it is clearly without merit; such lack of merit may consist of an absence of law to support a claim of the sort made . . ." *Id.* "For the purpose of a motion to dismiss, the allegations of the complaint are treated as true." *Id.*

¶ 24 "Historically, parties have endeavored to avoid potential litigation concerning judicial jurisdiction and the governing law by including in their contracts provisions concerning these matters." *Johnston Cty. v. R.N. Rouse & Co.*, 331 N.C. 88, 92, 414 S.E.2d 30, 33 (1992). "Although the language used may differ from one contract to another, one or more of three types of provisions (choice of law, consent to jurisdiction, and forum selection), which have very distinct purposes, may often be found in the boilerplate language of a contract." *Id.* "[A] choice of law provision, names a particular state and provides that the substantive laws of that jurisdiction will be

---

[2] Defendant, at this stage, seems to accept for purposes of this appeal that if North Carolina law applies then Plaintiffs' Complaint is sufficient to state a claim for relief. Therefore, we do not address the adequacy of Plaintiffs' Complaint as it relates to the underlying claims.

used to determine the validity and construction of the contract, regardless of any conflicts between the laws of the named state and the state in which the case is litigated." *Id.* "The parties' choice of law is generally binding on the interpreting court as long as they had a reasonable basis for their choice and the law of the chosen State does not violate a fundamental policy of the state of otherwise applicable law." *Behr v. Behr*, 46 N.C. App. 694, 696, 266 S.E.2d 393, 395 (1980). Further, "not all [contract] provisions cover extra-contractual statutory claims." *Strange v. Select Mgmt. Res., LLC*, 2021 U.S. Dist. LEXIS 121076, *24, 2021 WL 2649269 (M.D.N.C. Oct. 17, 2019) (unpublished). It follows that where claims are brought under statutes reflective of fundamental North Carolina policy, a choice-of-law provision which has the effect of attempting to avoid such claims is not binding on a trial court. *See Shwarz v. St. Jude Med., Inc.*, 254 N.C. App. 747, 754, 802 S.E.2d 783, 789 (2017) ("[O]ur courts have not honored choice-of-law provisions in contracts when application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which . . . would be the state of applicable law in the absence of an effective choice of law by the parties." (citation and quotation omitted)). *Cf. Burke Cty. Pub. Sch. Bd. of Educ. v. Shaver P'ship*, 303 N.C. 408, 423, 279 S.E.2d 816, 825 (1981) (Holding choice-of-law provision attempting to preclude application of the Federal Arbitration Act invalid because "[t]o allow the parties to

contract away the application of the Act . . . would be inconsistent with the Act itself.").

In this case, Plaintiffs have brought extra-contractual statutory claims under the NCCFA, the UDTPA, and alternatively, North Carolina usury law.  We address each of these claims in turn.

1. <u>Violation of the NCCFA</u>

The NCCFA makes unenforceable any "loan contract made outside this State in the amount or of the value of fifteen thousand dollars ($15,000) or less, for which greater consideration or charges than those authorized by N.C.G.S. § 53-173 and N.C.G.S. § 53-176 have been charged, contracted for, or received."  N.C. Gen. Stat. § 53-190(a) (2021).  Lenders may only avoid application of the NCCFA if "all contractual activities, including solicitation, discussion, negotiation, offer, acceptance, signing of documents, and delivery and receipt of funds, occur entirely outside North Carolina."  N.C. Gen. Stat. § 53-190(a) (2021).  Moreover, in enacting the most recent version of the NCCFA our state legislature recognized:

> new schemes continue to be devised in order to circumvent the lending laws of North Carolina and to avoid regulation by the Commissioner of Banks.  It is the intent of the General Assembly that [the NCCFA] should be construed broadly to prohibit illicit lending schemes and to clarify the devices, subterfuges, and pretenses that are prohibited . . .

An Act to Clarify the Application of the North Carolina Consumer Finance Act to Various Lending Subterfuges, S.L. 2006-243, § 1, 2006 N.C. Sess. Laws 1038, 1038.

Here, Defendant has attempted to avoid application of North Carolina law, and in particular here application of the NCCFA, by including a choice-of-law provision in their loan agreements and by requiring Plaintiffs to drive to South Carolina to sign the loan documents and receive the funds. However, the NCCFA expressly states the law is to be applied to loans made outside the state unless all contractual activities occur entirely outside of the state. Indeed, in this case, Plaintiffs have made specific allegations—which solely for the purpose of this appeal we treat as true—to show Defendant has conducted contractual activities within the state, rendering the NCCFA applicable. For example, Plaintiffs alleged Defendant solicited, discussed, and negotiated the terms of loan agreements, used the DMV to perfect their security interest, and repossessed cars in North Carolina.

Despite Defendant's arguments to the contrary seeking to avoid application of the NCCFA, for the purpose of this claim, to enforce the choice-of-law provision at this stage of the proceeding,[3] would violate the stated fundamental public policy of

---

[3] As this case proceeds, there may well be facts to show Defendant did not conduct any contractual activities within North Carolina, and thus, the NCCFA would not apply. Indeed, the trial court seemed to recognize this possibility and expressly stated: "This Order denying Defendant's Rule 12(b)(6) motion is without prejudice to the Court making a determination of any choice of law issue in the future based upon a more complete evidentiary record."

North Carolina to broadly construe and apply the NCCFA to cover loan contracts made outside this state. *See* N.C. Gen. Stat. § 53-190(a). Thus, the trial court did not err by declining to enforce the choice-of-law clause to bar Plaintiffs' NCCFA claim. Therefore, Plaintiff's Complaint—to the extent the NCCFA provides a private citizen a cause of action[4]—states a claim under North Carolina law. Consequently, the trial court properly denied Defendant's Motion to Dismiss the NCCFA claim.

2. Violation of the UDTPA

N.C. Gen. Stat. § 75-1.1 (2021) states:

> Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful.

The legislative history of the UDTPA, as succinctly explained by *Broussard v. Meineke Discount Muffler Shops*, indicates the legislature intended for the statute to be broadly applied in order to protect citizens of North Carolina.

> Prior to 1977, section 75-1.1 was specifically limited to 'dealings within this state.' North Carolina's General Assembly deleted the geographical limitation in 1977. Courts interpreted the legislature's action as a desire to expand the scope of section 75-1.1 to the limits of North Carolina's long-arm statute, N.C. Gen. Stat. § 75.4(4). Thus, section 75-1.1 applies if the plaintiff alleges a substantial injurious effect on [a] plaintiff . . . in North Carolina.

---

[4] An issue not before us.

*Broussard v. Meineke Discount Muffler Shops*, 945 F. Supp. 901, 917 (W.D.N.C. 1996) (citation and quotation marks omitted). *See also, Bhatti v. Buckland*, 328 N.C. 240, 245, 400 S.E.2d 440, 443-44 (1991) ("The wording of the statute and its purpose is broad and section (b), on its face, extends the statute to commercial dealings between persons at all levels of commerce."). Moreover, our Supreme Court has previously concluded "violations of statutes designed to protect the consuming public and violations of established public policy may constitute unfair and deceptive practices." *Stanley v. Moore*, 339 N.C. 717, 723, 454 S.E.2d 225, 228 (1995). Indeed, this Court has consistently held defendants who offer usurious loans to residents of North Carolina commit unfair and deceptive trade practices as a matter of law. *See State of N.C. v. NCCS Loans*, 174 N.C. App. 630, 641, 624 S.E.2d 371, 378 (2005); *Odell v. Legal Bucks, LLC*, 192 N.C. App. 298, 320, 665 S.E.2d 767, 781 (2008).

¶ 30      Here, Plaintiffs have alleged sufficient facts—which we treat as true for purpose of the 12 (b)(6) Motion—to show Defendant's acts in or affecting commerce have a substantial injurious effect on citizens in North Carolina by depriving them of the protection of North Carolina usury law. *See Broussard*, 945 F. Supp. at 917. For example, Plaintiffs alleged Defendant "knew or should have known that each Plaintiff was a North Carolina resident and held a North Carolina title on their vehicle," but nevertheless, entered into loan agreements with each Plaintiff "at an annual interest rate that far exceeds the lawful rate of interest in North Carolina." Moreover,

Plaintiffs alleged "Defendant purposefully established its business locations just across the North Carolina-South Carolina state line to avoid the application of North Carolina law to contracts . . ." and "required the execution of the written title loan agreements at issue in South Carolina in bad faith with the specific purpose and intent of evading the usury laws of North Carolina."

¶ 31 Therefore, despite Defendant's effort to avoid the application of North Carolina law, for the purposes of Plaintiffs' UDTPA claim, to enforce the choice-of-law provisions would violate the inherent public policy of North Carolina to broadly construe the UDTPA in order to provide a private cause of action for injured North Carolina consumers. *See Broussard*, 945 F. Supp. at 917. Thus, the trial court did not err by concluding Plaintiffs' Complaint contains sufficient allegations to support a claim under the UDTPA despite the inclusion of a choice-of-law provision in Plaintiffs' contracts stating South Carolina law should apply. Consequently, the trial court did not err by denying Defendant's Motion to Dismiss pursuant to 12(b)(6).

3. <u>Usury Claim</u>

¶ 32 The North Carolina usury statute states: "any extension of credit shall be deemed to have been made in this State, and therefore subject to the provisions of this Chapter if the lender offers or agrees in this State to lend to a borrower who is a resident of this State, or if such borrower accepts or makes the offer in this State to borrow, regardless of the situs of the contract as specified therein." N.C. Gen. Stat. §

24-2.1(a) (2021). Moreover, the statute expressly states: "[i]t is the paramount public policy of North Carolina to protect North Carolina resident borrowers through the application of North Carolina interest laws." N.C. Gen. Stat. § 24-2.1(g) (2021).

¶ 33    Here, Plaintiffs alleged:

> as to one, some or all Plaintiffs, Defendant engaged in solicitations and made oral offers to lend that were received in North Carolina[.] As to one, some or all Plaintiffs, Defendant received solicitations or communications from Plaintiffs that originated in North Carolina for Plaintiffs to borrow.

Thus, here too, because Plaintiffs have alleged sufficient facts to show Plaintiffs' loan contracts are subject to the application of North Carolina usury law, to enforce the choice-of-law provision would violate the stated public policy of North Carolina to protect North Carolina resident borrowers through the application of North Carolina usury laws. Therefore, the trial court did not err by concluding Plaintiffs adequately alleged claims under North Carolina usury law applicable to the loan agreements in this case for purposes of a Motion to Dismiss. Consequently, the trial court did not err in denying Defendant's Motion to Dismiss for failure to state a claim.

### III. Proper Venue & Forum Selection Clause

¶ 34    Defendant contends the trial court erred by denying its Motion to Dismiss pursuant to North Carolina Rule of Civil Procedure 12 (b)(3) because ten out of fifteen of Plaintiffs' loan agreements contain a forum selection clause mandating disputes "in relation to or in any way in connection with the Agreements . . . be brought

exclusively in the courts of competent jurisdiction located in South Carolina."[5] Thus, according to Defendant, the forum selection clause mandates venue was only proper in South Carolina. Moreover, Defendant contends Richmond County is not a proper venue because "none of the Plaintiffs except Doris Wall, Patricia Smith, and Michael Waddell are residents of Richmond County."

A. Standard of Review

"A party may move to change venue based on several grounds under the applicable statute, N.C. Gen. Stat. § 1-83, and our standard of review is dependent upon the particular ground alleged by the movant." *Lowrey v. Choice Hotels Int'l, Inc.*, 279 N.C. App. 107, 2021-NCCOA-436, ¶ 19 (unpublished).

Generally, our Court reviews a trial court's order denying a motion to dismiss for improper venue in cases involving a forum selection clause under the abuse of discretion standard.[6] *SED Holding, LLC v. 3 Star Props., LLC,* 246 N.C. App. 632, 636, 784 S.E.2d 627, 630 (2016). "The test for abuse of discretion requires the

---

[5] This Court has recognized "a forum selection clause designates the venue and therefore a motion to dismiss for improper venue pursuant to Rule 12(b)(3) would be most applicable." *Hickox v. R&G Group Int'l*, 161 N.C. App. 510, 511, 588 S.E.2d 566, 567 (2003). "The motion should accordingly be treated as one to remove the action, not dismiss it." *Id.* (citing *Coats v. Hospital*, 264 N.C. 332, 141 S.E. 2d 490 (1965)).

[6] The standard for reviewing "a trial court's *interpretation* of a forum selection clause is an issue of law that is reviewed de novo." *US Chem. Storage, LLC v. Berto Constr., Inc.*, 253 N.C. App. 378, 382, 800 S.E.2d 716, 720 (2017) (emphasis added). However, this Court applies an abuse of discretion standard when the trial court issues an order regarding the *enforceability* of the clause under a Rule 12(b)(3) motion. *See SED Holding, LLC v. 3 Star Props., LLC*, 246 N.C. App. 632, 636, 784 S.E.2d 627, 630 (2016)

reviewing court to determine whether a decision 'is manifestly unsupported by reason' or 'so arbitrary that it could not have been the result of a reasoned decision.' " *Appliance Sales & Serv. v. Command Elecs. Corp.*, 115 N.C. App. 14, 22, 443 S.E.2d 784, 789 (1994) (citing *Little v. Penn Ventilator, Inc.,* 317 N.C. 206, 218, 345 S.E.2d 204, 212 (1986)).  However, if a party moves for change of venue on the basis that the plaintiff brought suit in the wrong county, the motion and order entered thereon concern a question of law we review de novo.  *Stern v. Cinoman*, 221 N.C. App. 231, 232, 728 S.E.2d 373, 374 (2012).

B.  Enforceability of the Forum Selection Clause

"A forum selection provision designates a particular state or court as the jurisdiction in which the parties will litigate disputes arising out of the contract and their contractual relationship."  *Johnston Cty.*, 331 N.C. at 93, 414 S.E.2d at 33.  "Forum selection clauses do not deprive the courts of jurisdiction but rather allow a court to refuse to exercise that jurisdiction in recognition of the parties' choice of a different forum."  *Id.*  Generally, a forum selection clause should be enforced unless the contract is a product of fraud or unequal bargaining power, enforcement of the clause would be unreasonable or unfair, or enforcement of the clause would contravene a strong public policy of the forum in which suit is brought.  *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15, 32 L. Ed. 2d 513, 523 (1972).  For contracts entered into in North Carolina, "forum selection clauses . . . are generally disfavored,

'against public policy,' and 'void and unenforceable' unless they appear in 'non-consumer loan transactions.' " *SED Holding, LLC*, 246 N.C. App. at 637, 784 S.E.2d at 631. Indeed, N.C. Gen. Stat. § 22B-3 generally prohibits enforceability of a forum selection clause:

> . . . in a contract entered into in North Carolina that requires the prosecution of any action or the arbitration of any dispute that arises from the contract to be instituted or heard in another state is against public policy and is void and unenforceable. This prohibition shall not apply to non-consumer loan transactions or to any action or arbitration of a dispute that is commenced in another state pursuant to a forum selection provision with the consent of all parties to the contract at the time that the dispute arises.

N.C. Gen. Stat. § 22B-3 (2021).

¶ 38        We address the applicability of the forum selection clause under each claim.

1. NCCFA Claim

¶ 39        As discussed above, the NCCFA expressly applies to loans made outside this state unless all contractual activities including solicitation, discussion, negotiation, offer, acceptance, signing of documents, and delivery and receipt of funds occur entirely outside of North Carolina. N.C. Gen. Stat. § 53-190(a) (2021). Therefore, since Defendant—at a minimum—solicited in North Carolina, the NCCFA applies. Moreover, the NCCFA, by its terms, evinces a clear public policy that loans to which it applies should be subject to oversight in North Carolina. Enforcement of the forum selection clause despite the clear application of the NCCFA to Plaintiffs' loan

contracts would run counter to this policy. Thus, for the purpose of Plaintiffs' NCCFA claim, to enforce the forum-selection clause would violate the inherent public policy of North Carolina, as reflected in the NCCFA, to regulate loan contracts made elsewhere if some form of contractual activity took place in North Carolina. Therefore, the forum selection clause is rendered unenforceable as against public policy. Consequently, the trial court did not abuse its discretion in denying Defendant's Motion to Dismiss for improper venue.

2. UDTPA Claim

In determining whether, for the purposes of the UDTPA claim, enforcement of the forum selection clause would contravene a strong public policy of North Carolina, we consider the purposes underlying the protections provided by the UDTPA. The General Assembly initially stated the purpose of section 75-1.1 as follows:

> The purpose of this section is to declare, and to provide civil legal means to maintain, ethical standards of dealings between persons engaged in business and between persons engaged in business and the consuming public *within this State* to the end that good faith and fair dealings between buyers and sellers at all level[s] of commerce be had in this State.

N.C. Gen. Stat. § 75-1.1 (1975) (emphasis added). Indeed, even after the law was amended in 1977, our Supreme Court reiterated: "[t]he law was enacted 'to establish an effective private cause of action for aggrieved consumers *in this State.*'" *Bhatti v.*

*Buckland*, 328 N.C. 240, 245, 400 S.E.2d 440, 443 (1991) (emphasis added) (citing *Marshall v. Miller*, 302 N.C. 539, 543, 276 S.E.2d 397, 400 (1981)).

¶ 41    Here, for the purpose of the UDTPA claim, enforcement of the forum selection would defeat the original purpose of the law by requiring aggrieved consumers to bring a cause of action *outside* of this State. Thus, insofar as Plaintiffs have a claim under the UDTPA, to enforce the forum selection clause, would violate the public policy of this state to provide a private cause of action to citizens *within* North Carolina. Therefore, the trial court did not abuse its discretion by refusing to enforce the forum selection clause for the purpose of the UDTPA.

### 3. Usury Claim

¶ 42    N.C. Gen. Stat. §22B-3 renders a contract "*entered into in North Carolina* that requires the prosecution of any action . . . to be instituted or heard in another state [ ] against public policy and [ ] void and unenforceable." N.C. Gen. Stat. §22B-3 (2021) (emphasis added). Generally, "the test of the place of a contract is as to the place at which the last act was done by either of the parties essential to a meeting of minds." *Bundy v. Commercial Credit Co.*, 200 N.C. 511, 515, 157 S.E. 860, 862 (1931) (citations omitted). For written contracts, the last act essential to the formation of the contract is the affixation of the final signature. *Szymczyk v. Signs Now Corp.*, 168 N.C. App. 182, 187, 606 S.E.2d 728, 733 (2005).

¶ 43      However, N.C. Gen. Stat. § 24-2.1(a) modifies this general rule, and for the purpose of a usury law claim, deems a loan agreement:

> *to have been made* in this State, and therefore subject to the provisions of this Chapter if the lender offers or agrees in this State to lend to a borrower who is a resident of this State, or if such borrower accepts or makes the offer in this State to borrow, regardless of the situs of the contract as specified therein.

N.C. Gen. Stat. § 24-2.1(a) (2021) (emphasis added).

¶ 44      Indeed, Plaintiffs' Complaint contains facts to show that their contracts meet the definition of a contract deemed "to have been made in this State." For example, the Complaint alleges while some of the Plaintiffs were in North Carolina, Defendant discussed the terms of the loans with some of the Plaintiffs including the specific loan amount and asked if the Plaintiff wanted to obtain the loan. If the Plaintiff said yes, Defendant would tell the Plaintiff to drive to South Carolina with the proper documentation. Thus, since Defendant offered the loan to Plaintiffs and Plaintiffs verbally accepted the terms of the loan while they were in North Carolina, under N.C. Gen. Stat. § 24-2.1, the loan agreements would be deemed to have been made in North Carolina. *See* N.C. Gen. Stat. § 24-2.1(b) (2021) ("Any solicitation or communication to lend, oral or written, originating outside of this State, but forwarded to and received in this State by a borrower who is a resident of this State, shall be deemed to be an offer or agreement to lend in this State."). Therefore, for the purposes of the usury law claim, since the contracts are deemed to have been entered into in North

Carolina, N.C. Gen. Stat. § 22B-3 renders the clause unenforceable as against public policy. *See* N.C. Gen. Stat. § 22B-3 (2021).

¶ 45 Moreover, even presuming N.C. Gen. Stat. § 22B-3 does not apply to render the forum selection clause unenforceable, North Carolina usury law makes clear that "[i]t is the paramount public policy of North Carolina to protect North Carolina resident borrowers" from usurious loans. N.C. Gen. Stat. § 24-2.1(g). Therefore, for the purpose of Plaintiffs' usury law claim, to enforce the forum-selection clause would violate the stated fundamental public policy of North Carolina "to protect North Carolina resident borrowers" as it would divest North Carolina of the opportunity to enforce their laws and protect its citizens. Consequently, the forum selection clause is rendered unenforceable as against public policy. Thus, the trial court did not abuse its discretion in denying Defendant's Motion to Dismiss for improper venue.

C. <u>Venue in Richmond County, North Carolina</u>

¶ 46 Venue "is defined as 'the proper or a possible place for a lawsuit to proceed, usually because the place has some connection either with the events that gave rise to the lawsuit or with the plaintiff or defendant.' " *Stokes v. Stokes*, 371 N.C. 770, 773, 821 S.E.2d 161, 163 (2018) (quoting Venue, Black's Law Dictionary (10th ed. 2014)). "It has long been understood that venue is regulated by statute." *Osborne v. Redwood Mt., LLC*, 275 N.C. App. 144, 148, 852 S.E.2d 699, 702 (2020). "However,

there are specific venue statutes for only a limited number of actions." *Id.* Thus, unless subject to a venue statute of more specific application,

> [i]n all other cases the action must be tried in the county in which the plaintiffs or the defendants, or any of them, reside at its commencement, or if none of the defendants reside in the State, then in the county in which the plaintiffs, or any of them, reside . . .

N.C. Gen. Stat. § 1-82 (2021).

Here, Plaintiffs' claims are not subject to a venue statute of more specific application, and thus, N.C. Gen. Stat. § 1-82 applies. Under this statute—contrary to Defendant's contention—only one of the Plaintiffs was required to reside in Richmond County on 4 June 2020 when the Complaint was filed because Defendant is not a resident of North Carolina, and all the Plaintiffs reside in North Carolina. Thus, the trial court did not err by concluding "venue was proper in Richmond County because at least one Plaintiff was (and remains) a resident of Richmond County at the time the matter was filed." Consequently, the trial court did not err in denying Defendant's Motion to Dismiss for lack of venue.

## **Conclusion**

Accordingly, for the foregoing reasons, we affirm the trial court's Order denying Defendant's Motion to Dismiss pursuant to Rules 12(b)(2), 12(b)(3), and 12(b)(6).

AFFIRMED.

Judges WOOD and GORE concur.